BEARDEN et al. v. BENNER.

(Circuit Court, S. D. Georgia, W. D.   February 18, 1903.)

1. PARTITION—EQUITABLE JURISDICTION.
    The power of partition in equity court discussed.

2. SAME.
    This power will never be exercised where the title is denied or suspicious, until the party seeking a partition has had an opportunity to try his title at law.

8. SAME—ADVERSE POSSESSION.
    A disseisin or adverse possession destroys the common possession, and bars a suit for partition so long as the ouster continues.

4. QUIETING TITLES—PARTIES.
    Only those who have a clear legal and equitable title to land connected with possession have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title, except where this rule is dispensed with by statute.

5. SAME—ACCOUNTING.
    An alleged necessity for an accounting in such cases does not confer jurisdiction in equity.

6. PARTITION—DEMURRER.
    In taking order sustaining a demurrer to a bill for partition, where the title is in good faith placed in issue, the bill will be retained for a reasonable time in order that partition may be effected, in case complainants should prevail at law in the assertion of their legal title.

(Syllabus by the Court.)

In Equity.

James L. Anderson and Walter J. Grace, for complainants.
Washington Dessau and Walter A. Harris, for respondent.

¶ 3. See Partition, vol. 38, Cent. Dig. § 64.

SPEER, District Judge. C. E. Bearden, H. F. Bearden, and Susie May Kunkel, formerly Bearden, citizens of Tennessee, have filed a bill invoking the equitable power of this court for the partition of a valuable business lot, with the improvements thereon, situated in the city of Macon, in this district. Briefly stated, it is averred in the bill that the title to the lot in dispute was vested in Charles A. Ells, Jr., and his sister Elizabeth M. Ells, by virtue of a devise in the will of their father, Charles A. Ells, Sr. This is not in dispute. Both the complainants and the defendant claim title by virtue of this devise. It further appears from the bill that on the 21st day of March, 1867, Elizabeth M. Ells entered into an antenuptial contract and settlement with William Morgan Bearden. The marriage was afterwards consummated, and the complainants before the court are the offspring thereof. Among other things, the antenuptial settlement provided as follows:

"That, for and in consideration of a marriage now about to be had and solemnized between the said above-named parties, the said party of the first part (William Morgan Bearden) does for himself, his heirs, executors, and administrators, covenant, grant, and agree that all the property rights and interest in property, of whatsoever nature, now vesting in, or hereafter to be acquired by, the said Elizabeth M. Ells, shall remain the separate property of the said Elizabeth M. Ells, free from the payment of any debt, default, or contract of her husband during her natural life, and the same at her death to vest in, and become the property of, such child or children as she may then have living," etc.

The contract contains another stipulation, as follows:

"And it is further agreed that should it at any time be deemed advisable by the said parties during this marriage to sell any part of said property for the purpose of reinvesting the proceeds thereof in other like property, that the same may be done by their uniting together in the execution of the deed or deeds of conveyance of the same."

The bill further recites that on the 25th day of November, 1889, Elizabeth M. Bearden, formerly Ells, and Charles A. Ells, Jr., her brother, executed a deed to John H. Benner conveying the premises in dispute. William Morgan Bearden was not a party to said deed, nor did he in any wise unite in the same. In November, 1898, Elizabeth M. Bearden departed this life, leaving the complainants her only children or representatives of children. The deed to Benner purported to convey a fee-simple title to all of the property, but it is alleged that the legal effect of this deed, so far as Elizabeth M. Bearden is concerned, was merely to convey her life estate, and that by virtue of the terms of the marriage settlement referred to, the fee-simple title to one-half undivided interest in said property vested in the complainants. Notwithstanding this fact, and that they are and have been entitled to possession since the death of their mother, Benner is in possession and claiming title to the entire property under his deed of November 25, 1889, refusing to recognize any right of possession of the complainants or any liability on his part to account to them for the rents, issues, and profits. This possession of Benner has been a continuous possession from the date of the death of their mother, the value of complainants' undivided half interest is $15,000 or other large sum, and this half interest has been worth from $100 to $125 a month since the 1st day of December, 1898. This deed to Benner of November 25, 1889,

it is alleged, constitutes a cloud upon the title of complainants, inasmuch as it purports to convey to Benner not merely the life estate of Elizabeth M. Bearden to a one-half undivided interest, but purports to convey a fee-simple title to the whole. Benner has made improvements upon the property, the extent and value of which complainants, for the want of definite information, are not able to aver. They state that Benner claims the value of such improvements to be $10,000, and that if complainants are entitled to recover they are accountable to him for their pro rata share of these improvements. This involves an accounting between Benner and the complainants as to the extent of the improvements made by him, the nature, character, and amount thereof, the amount of rents due by him, the determination of the question as to whether or not complainants are liable for any part of said improvements, and, if so, how much, and whether such amount is more or less than their share in the rents. It is stated that such accounting will necessarily be long and intricate, and cannot be satisfactorily had at law, and can only be had in a court of equity, where such matters are properly cognizable. Complainants desire a partition of this lot between themselves and the defendant, and, on account of the valuable improvements made upon the property and their peculiar location, a fair equitable division of the same by metes and bounds, it is alleged, cannot be had. It will therefore be necessary for the lot to be sold in order that such division may be made. They further recite the fact that Benner has during his possession mortgaged the whole of this property to a bank for the purpose of securing a loan of $10,000, and, while this loan has been satisfied, he is liable to convey it anew, thus incurring danger of a multiplicity of suits, and opposing the interest of a bona fide purchaser for value to that of complainants. The bill waives discovery, and prays that complainants' title to a one-half undivided interest in the property be decreed and confirmed; that the deed from Charles A. Ells, Jr., and Elizabeth M. Ells to John H. Benner be decreed to have the legal effect of having conveyed to Benner, so far as Elizabeth M. Bearden, formerly Ells, is concerned, only her life estate in said property; that if necessary said deed be corrected and reformed so as to show the right and title of complainants, and thus remove the cloud resting upon their title; that the defendant be decreed to account for and pay over to complainants the rents, issues, and profits to which they are entitled, and that a decree ordering a sale of the land in dispute, under the directions of the court, may be had for the purpose of equitably and fairly apportioning the same between complainants and the defendant; and that after the sale of the property that the part of the proceeds to which complainants are entitled be paid over to them or their legal representatives. A preliminary injunction is prayed, restraining Benner from selling or incumbering the interest claimed by complainants. There is also a prayer for general relief.

To this bill the defendant has demurred on several grounds. While these are stated with scrupulous and extended particularity of detail, they may be condensed into the propositions that the complainants have a full, complete, and adequate remedy at law; that the bill is without equity; that the bill is multifarious; and that the plaintiffs

seek to try title to real estate, remove cloud from the title, to have a partition of land, an accounting and recovery of possession of real estate, a cancellation of an instrument, and the reformation of a contract. This, it is contended, is not within the power of a court of equity to grant in one proceeding.

The questions raised by the demurrer have been argued with ample citation of authority. A brief reference to the controlling principle, as settled by authoritative text-writers and decisions, will suffice for present determination.

The bill very clearly indicates that the defendant holds the possession of the land in dispute adversely to complainants and under claim of title to the fee in himself. This is not only conceded, but is alleged as one of the grounds for equitable relief. It is obviously sought under the guise of a prayer for partition. In proper cases this has been a long-established power in the equity courts. In the reign of Elizabeth the court of chancery began to assume jurisdiction in partition, and it became so common that the writ of partition and compulsory process against joint tenants and tenants in common created by act of Parliament in the reign of Henry VIII became obsolete, and was finally abolished in the early part of the last century. Under the English judicature act of 1873, proceedings for partition are now specially intrusted to the chancery division of the court. The writ of partition, as enacted by St. 31 & 32 Henry VIII, we have the authority of Chancellor Kent for stating, has been gradually re-enacted and adopted, with probably enlarged facilities for partition, in the United States. This, however, relates to statutory remedies granted in the several states, and, we may add, by act of Congress in the District of Columbia. Willard v. Willard, 145 U. S. 116, 12 Sup. Ct. 818, 36 L. Ed. 644. The same eminent writer (Commentaries, 4th vol., p. 364) states that while—

"The jurisdiction of chancery in awarding partition is well established in England by a long series of decisions, and it has been found by experience to be a jurisdiction of great public convenience, a court of equity does not interfere unless the title be clear, and never where the title is denied, or suspicious, until the party seeking a partition has had an opportunity to try his title at law. The same principle has been acted upon in the courts of equity in this country."

In a footnote to this paragraph it is stated, upon what seems conclusive authority, that a disseisin or adverse possession destroys the common possession, and bars a suit for partition so long as the ouster continues; citing Clapp v. Bromagham, 9 Cow. 530; Adam v. Ames Iron Co., 24 Conn. 230. Many other cases might be added.

Nor does the claim that the jurisdiction is here required to confirm and quiet title of the complainants strengthen their rights to this proceeding. In Orton v. Smith, 18 How. 263, 266, 15 L. Ed. 393, it is announced that those only who have a clear legal and equitable title to land connected with possession have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title. In a great many cases this rule is cited and approved. See Rose's Notes U. S. Reports, pp. 572–3. It seems to be distinguished and explained in Holland v. Challen, 110 U. S. 20, 3 Sup. Ct. 495, 28

L. Ed. 52, where the rule itself was dispensed with by a Nebraska statute; but the Supreme Court has been occupied to some extent since Holland v. Challen was decided in distinguishing that case, notably in Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873. In that case a suit in equity for real property against a party in possession was not sustained upon the ground that there was a plain, adequate, and complete remedy at law. And in Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, the time-honored and clearly marked distinction in the courts of the United States between proceedings in law and equity is somewhat fully discussed, the court observing:

"It has been often adjudged that whenever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate, and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury, but because of the prohibition of the act of Congress to pursue his remedy in such cases in a court of equity."

Nor can the court maintain jurisdiction in equity upon the alleged necessity for an accounting. This has been long settled. Hipp v. Babin, 19 How. 271–278, 15 L. Ed. 633. In that case the Supreme Court, through Mr. Justice Campbell, said:

"Nor can the court retain the bill, under an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits, and improvements. The rule of the court is that when a suit for the recovery of the possession can be properly brought in a court of equity, and a decree is given, that court will direct an account as an incident in the cause. But when a party has a right to a possession, which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction."

This is a leading case and often cited. It is true that this proceeding might have been maintained under the hybrid practice adopted by the statute in Georgia. This may be convenient in some cases, but the courts of the United States are of course controlled by the constitutional provision, and the act of Congress above quoted intended to make the constitutional inhibition definite and always applicable in proper cases.

While the court must sustain the demurrer to the extent of denying the complainants' right to proceed on the bill at this time, it does not seem proper that the bill should be at once dismissed, with a possibility that the alleged rights may be concluded. The bill was brought in apparent good faith, upon what seems to be a claim of title, to be determined by the construction of a marriage settlement annexed as an exhibit. The complainants then, to use the language of Chancellor Kent, should be given the opportunity to establish their legal title in a court of law.

Order will be taken, therefore, dismissing the bill finally, unless the complainants shall bring their action of ejectment, conformably to the usual practice, to the next term of the Circuit Court having jurisdiction, or to the next term of such other court as may have concurrent jurisdiction. In case such proceedng in ejectment is instituted, this bill will be retained in its present status for a reasonable time, in order that partition may be thereafter effected in case complainants

should prevail upon the assertion of their legal title. The following authorities seem to sustain this course: Brown v. Cranberry Iron & Coal Co. (C. C.) 40 Fed. 849; 3 Pomeroy's Eq. Jur. § 1388.

It follows that the preliminary injunction in this case will remain of effect until such ejectment proceeding may be filed.