FRANK C. BERTELMANN *v.* MARY N. LUCAS AND HER HUSBAND, CHARLES LUCAS, ET AL.

No. 1462.

APPEAL FROM CIRCUIT JUDGE FIFTH CIRCUIT. HON. W. C. ACHI, JR., JUDGE.

ARGUED FEBRUARY 11, 12, 13, 1924.     DECIDED JUNE 27, 1924.

CIRCUIT JUDGE ANDRADE IN PLACE OF PETERS, C. J., DISQUALIFIED; CIRCUIT JUDGE ROSS IN PLACE OF PERRY, J., DISQUALIFIED, AND CIRCUIT JUDGE CASE IN PLACE OF LINDSAY, J., DISQUALIFIED.

EQUITY—*pleadings—multifarious.*

A bill in equity brought by A against B, C and D, who are in possession of lands, for the purpose of removing cloud from title, quieting title and an equitable accounting as to B, quieting title and accounting as to C and accounting as to D, to secure the possession of said lands as to B, C and D, and partition in the event that A is found to be the owner of a moiety; also to have cancelled certain deeds and agreements executed by A to E, F and G, on the ground of fraud and failure of consideration and to compel reconveyances, *held* on demurrer to be multifarious, because there is no joint liability, common interest

or other connection between B and the other respondents, or any joint liability, common interest or other connection between C and other respondents.

SAME.

The bill being multifarious cannot be maintained on the theory of avoiding a multiplicity of suits.

SAME.

There is a misjoinder of parties respondent and a uniting of several distinct, unrelated and disconnected causes of action, which, upon a hearing would necessarily result in much inconvenience to the court, numerous counsel and many respondents. The bill is multifarious.

ADEQUATE REMEDY AT LAW.

A, claiming a legal title and being out of possession, will not be permitted to maintain his bill to remove cloud or clouds from the title and at the same time have his title quieted to other portions of the same land in one suit in equity.

SAME.

Under the provisions of the statute R. L. 1915, chapter 153, the necessary defendants could be joined in an action to quiet title at law. This statute allows plaintiffs, whether in or out of possession, to join as defendants all persons who claim interest in the land and in such proceedings the parties are accorded their constitutional right to a trial by jury.

SAME.

Equity will not take jurisdiction in a case in which several claims against separate persons properly cognizable only at law are united in the same bill with various claims for equitable relief against a number of respondents, setting out independent causes of action against certain of the respondents in which some of them have not a common interest.

OPINION OF THE COURT BY CIRCUIT JUDGE ANDRADE.

This is an appeal from a decree of the judge of the circuit court of the fifth judicial circuit sitting in equity sustaining the several demurrers of the respondents Mary N. Lucas, Charles Lucas, Kilauea Sugar Plantation Company, Janet M. Scott, Rubena F. Scott, Bishop Trust Company, Limited, L. L. McCandless, Noa W. Aluli and John C. Lane to the petitioner's amended petition and bill upon

each and every ground therein severally stated and dismissing petitioner's said amended petition and bill. Petitioner's amended petition and bill was brought against Mary N. Lucas, Charles Lucas, the Kilauea Sugar Plantation Company, Janet M. Scott and Rubena F. Scott, Bishop Trust Company, Limited, L. L. McCandless, Noa W. Aluli, John C. Lane, The First National Bank of Hawaii at Honolulu and the children of Christian Bertelmann, deceased, named as devisees and legatees under his will, who conveyed their several interests in the land in dispute to respondent Mary N. Lucas as well as the heirs at law of two of said children who died prior to the filing of these proceedings.

The said amended petition and bill is quite lengthy, comprising, with incorporated copies of instruments, some forty-five typewritten pages. It seems advisable, however, to embody herein a brief outline of its essential allegations. A summary of the bill, upon which petitioner bases his prayer for equitable relief, is here given:

On December 12, 1891, Christian Bertelmann, father of petitioner, executed a will. The portions thereof, material to an understanding of the issues raised in this case, will be found in *Bertelmann* v. *Kahilina,* 14 Haw. 385—dissenting opinion of Mr. Justice Perry.

On March 15, 1895, Christian Bertelmann died, seized of the lands in controversy; leaving surviving him a widow—Susan Bertelmann, three sons—Frank C. (petitioner), Henry G. and Christian Sylvester Bertelmann, and six daughters—Catherine Haunani, Justine Ludovica, Mary Angeline, Mary Wilhelmina, Mary Josephine and Beatrice. The will was probated April 18, 1895.

That the decision of this court in the case of *Bertelmann* v. *Kahilina,* defining the estate and interests of the widow and children of Christian Bertelmann charged third parties with notice, and was binding upon all who

might thereafter deal with those having or claiming to have rights in the Bertelmann property; and with notice that, at any time within a year following the expiration of a twenty-five year lease made by Christian Bertelmann to the Kilauea Sugar Company, a performing son or sons, having contingent executory devises, under the third article of Christian Bertelmann's will, would have the personal, inalienable right to tender $5000.00 to each of the daughters and shortcoming sons of Bertelmann; and, by so doing, acquire an absolute fee simple title to the lands in controversy; and that such interests in the property as respondents might claim were, as a matter of law, subject to such personal and inalienable right to acquire.

That when the time came within which the conditions of the will (article 3) might be fulfilled by a performing son, the two brothers—Henry C. and Christian Sylvester, were unable to perform, having sold to respondent—Mary Lucas, their respective interests in the land, as well as their rights to receive, as shortcoming sons, $5000.00 each; and that petitioner's sisters—save Catherine Haunani, had sold to respondent—Mary Lucas, their respective interests in the property as well as their rights as sisters to receive $5000.00 each.

That within the time, and in accordance with the terms of the will, petitioner fulfilled the conditions required of him as a performing son, by making legal tender of $35,000.00, under date of October 30, 1916, to respondent—Charles Lucas, as the authorized agent of Mary Lucas, he refusing payment; that tender was then made to respondent—Mary Lucas, at her place of residence; and, she not being found, the amount was deposited as a continuing tender to her credit in The First National Bank of Hawaii.

That Catherine Haunani (Mrs. Scott) sister of peti-

tioner, having died, leaving as her sole heirs three children—Walter W., Janet M. and Rubena F. Scott, the Bishop Trust Company, being legal guardian of their property, like tender of $5000.00 on the same date, was made by petitioner to such guardian; this tender also being refused, was deposited in the same bank as a continuing tender.

That, because of performance on his part of the conditions of the will, respondents—Mary and Charles Lucas and the Scott heirs, have been divested of their respective interests, such as they had, in the property in controversy, and that petitioner has become the owner in fee, and entitled to the immediate possession of said lands and the rents, thereof.

That since such tender was made respondents—Mary Lucas and Charles Lucas, have received and appropriated some $42,000.00 of rentals; from and out of which respondents should be required to accept $35,000.00 (amount of tender), and account to petitioner for the balance.

That on February 7, 1903, a sheriff's deed was executed purporting to convey to Mrs. Lucas all the interest which petitioner would have in the land after expiration of the lease to the Kilauea Sugar Company; that said deed was void because the judgment to satisfy which the deed was made was rendered while petitioner was absent from the Territory of Hawaii, without any notice thereof or such other service of summons to answer demand, as is required by due process of law; was sold for an inadequate consideration; that petitioner's interest in the land was not then subject to be sold because it was personal and non-assignable; that the sale of same was forbidden by law; that Mrs. Lucas never took possession under said sheriff's deed, and that said deed is a cloud on petitioner's title.

That under date of August 13, 1902, petitioner executed and delivered to respondent—Mary Lucas, a note for $9,845.00; securing its payment by mortgage of even date upon petitioner's interest in the lands in controversy. Petitioner alleges that this mortgage has not been foreclosed; that moneys collected by the mortgagee under power of attorney are far more than sufficient to pay principal and interest due; and that, for a number of years, under this power, respondent—Mary Lucas, collected petitioner's share of rentals accruing from said lands. That during these years Mary Lucas purchased from petitioner's brothers and sisters (other than Catherine Haunani) their respective interests in the lands in controversy; thus, as petitioner contends, becoming owner and tenant in common with him.

That, under these conditions respondents—Mary Lucas, and Charles Lucas doing business in her name, under date of June 20, 1911, leased to the Kilauea Sugar Plantation Company, the lands in controversy for a term of ten years from and after November 1, 1915 (the date of the expiration of the original lease from Christian Bertelmann), and that such company is now the tenant of the Lucases and petitioner, although making payment of all rentals to the Lucases.

That as soon as the original lease from Christian Bertelmann to the Kilauea Sugar Plantation Company, expired, petitioner, then having the right under his father's will, but lacking and being in great need of funds so to do, took steps to raise the necessary money with which to make payment or tender, as provided in his father's will, to his sisters and shortcoming brothers, or their respective assigns. With this end in view, under date of October 30, 1916, he made an agreement with respondents L. L. McCandless, Noa W. Aluli and John C. Lane, whereby, in consideration of an advance by Mc-

Candless to him of $40,000.00, to be used for purposes of tender, petitioner agreed to convey to McCandless an undivided 4/9 interest, and, in consideration of legal and other services rendered and to be rendered by Aluli and Lane, an undivided 2/9 interest, in the lands in controversy.

That under date of November 22, 1916, because of misrepresentations made to, and fraud practiced upon, him; and because so situated financially and otherwise that he did not dare refuse, petitioner executed and delivered a deed, conveying to respondent—L. L. McCandless an undivided 4/9 interest, and to respondents—Noa W. Aluli and John C. Lane, an undivided 2/9 interest, in the lands in controversy.

That, due to his straitened financial circumstances, respondent McCandless drove an unconscionable bargain with him; that the consideration paid by respondent—Aluli, partially failed, and, as to respondent—Lane, wholly failed; and that written demand has since been made upon Aluli and Lane to reconvey to petitioner the 2/9 interest deeded to them.

That in January of 1918, petitioner and respondents —L. L. McCandless, Noa W. Aluli and John C. Lane, as plaintiffs, filed an action of ejectment against respondents—Mary and Charles Lucas, the Kilauea Sugar Plantation Company, the Scott heirs and the Bishop Trust Company, Limited (guardians), for the recovery of the lands in controversy, and that this law action is still pending.

That the Bishop Trust Company, Limited, since October 30, 1916, has received and appropriated to its own use or the use of others, certain rentals derived from the lands in controversy; these rentals being the property of petitioner, and no accounting having been made therefor.

The prayers contained in the bill are numerous and

include cancellation of instruments, removal of clouds, quieting title, accountings, partition, a decree for the possession of the land and a judgment for the use or rents of said land.

That respondents—Mary Lucas and Charles Lucas, be required to account for all moneys collected as rentals from the lands in controversy during the year ending October 30, 1916, and covering the period from October 30, 1916, to date of filing bill; and that from these they be required to accept $35,000.00 (amount of tender), paying over to petitioner such surplus thereof as the court finds due him. That the deed from Arthur M. Brown, sheriff, to Mary Lucas, be declared null and void, and ordered cancelled. That they be required to account concerning all moneys collected under the power of attorney contained in mortgage from petitioner to Mary Lucas; the principal and interest due thereunder to be paid to her from such moneys, the balance paid over to petitioner, and the note and mortgage ordered cancelled; and that respondent Mary Lucas, be ordered and directed to convey to petitioner all of the interest and estate claimed by her in the lands in controversy.

That the Bishop Trust Company, Limited, as guardian of the Scott children, be required to account for all moneys collected as rentals between October 30, 1916, and time of filing of this bill, paying over to petitioner such amount thereof as the court finds due him; determine whether the heirs of Catherine Haunani Scott are entitled, under the will, to $5000.00; if so direct its payment from rentals collected; and decree that they convey to petitioner all interest and estate claimed by them in the lands in controversy.

As to respondents—McCandless, Aluli and Lane: that the court relieve petitioner from the inequitable conditions arising out of the execution and delivery of

agreement and deed from petitioner to them; order the agreement cancelled; declare the deed to be a mortgage, and direct its cancellation, and a reconveyance to petitioner of the lands in controversy; ascertain what amounts, if any, are equitably due these three respondents, for advances made, and services rendered, and direct payment of same by petitioner.

Directing The First National Bank of Hawaii to retain, subject to further order of court, the $40,000.00 there deposited as continuing tender; enjoining further proceedings in the action of ejectment; and if, due to want of tender and performance of conditions under the will by petitioner, the Lucases and Scotts are not divested of their respective interests, the court order partition of the lands in controversy, awarding unto petitioner his original 1/9 share, and such rentals as may be due him, and in general, doing equity as between all parties in interest.

A decree *pro confesso* was taken and entered as to the respondents named in said bill who failed to enter any appearance in the court below.

To this amended bill the respondents Mary N. Lucas, Charles Lucas, Kilauea Sugar Plantation Company, L. L. McCandless, Noa W. Aluli and John C. Lane, filed separate demurrers, while the respondents Janet M. Scott, Rubena F. Scott and Bishop Trust Company, Limited, filed a joint demurrer to said amended bill. These several demurrers are extensive and are based on many grounds which are stated with scrupulous and extended particularity of detail. They may be condensed into the propositions that the petitioner has a full, complete and adequate remedy at law; that there is a misjoinder of parties respondents; that petitioner is guilty of laches; that the bill is without equity; that the bill is multifarious; and that the petitioner seeks to try title

to real estate; remove cloud from title and quiet title to land; to have a partition of land; an accounting; a recovery of possession of real estate; to compel reconveyances; a cancellation of instruments, and the reformation of a deed. This, it is contended, is not within the power of a court of equity to grant in one proceeding.

The outstanding object of the bill taken as a whole, is to secure possession of the lands which are now in the possession of the Lucases, the Scotts and Kilauea Sugar Plantation Company, together with damages for use and occupation thereof, and so far as McCandless, Aluli and Lane are concerned, the object is to have cancelled certain conveyances made to them by petitioner.

The claims of the Lucases and Scotts on the one hand and McCandless, Aluli and Lane on the other hand, as disclosed by the bill, are antagonistic as between themselves, as well as adverse to the claim of the petitioner.

The bill seeks primarily relief against three sets of defendants, (1) the Lucases; (2) the Scotts, and (3) McCandless, Aluli and Lane; and incidentally relief against the Kilauea Sugar Plantation Company, Bishop Trust Company, Limited, and The First National Bank of Hawaii.

The relief sought against the Lucases is (1) cancellation of the sheriff's deed of February 7, 1903; (2) redemption of the mortgage made by petitioner on August 13, 1902; (3) to remove clouds on title; (4) quieting title; (5) an accounting for rents collected; (6) the partition of the land in the event that the court should find that petitioner, as well as the respondents, have interests in common in the land and (7) to obtain possession of the land.

Petitioner sets forth facts and circumstances showing that there is a controversy between petitioner and the

Lucases as to the legal title to 7/9 interest in the land in question, which involves a construction of the will of the late Christian Bertelmann, and the legal effect of certain tenders alleged to have been made to the Lucases on October 30 and 31, 1916.

Of the several grounds of demurrer to the amended bill herein only two need be specially noticed. They are (1) multifariousness, and (2) that even if petitioner had the right to sue, there was no ground of equitable jurisdiction set forth in the amended bill, and petitioner's remedy, if any he had, was at law.

The circuit judge sustained the several demurrers of respondents to said amended bill upon each and every ground therein severally stated.

In our judgment at least the two grounds of demurrer hereinabove stated are well taken.

As to the question of multifariousness the various courts, by their decisions and text writers, say:

"As to multifariousness, it was said in *Shields* v *Thomas,* 18 How. 253, 259: 'There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application, than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule, and that conclusion is, that each case must be determined by its peculiar features. Thus Daniell, in his work on Chancery Practice, vol. 1, p. 384, quoting from Lord Cottenham, says: 'It is impossible, upon the authorities, to lay down any rule or abstract proposition, as to what constitutes multifariousness, which can be made universally applicable. The cases upon the subject are extremely various, and the court, in deciding upon them, seems to have considered what was

convenient in particular cases, rather than to have attempted to lay down an absolute rule.'' Continuing his opinion, the learned justice in the above case said: 'Justice Story, in his compilation upon equity pleading, defines multifariousness in a bill to mean 'the improperly joining in one bill distinct and independent matters, and thereby confounding them.' * * * Justice Story closes his review of the authorities upon this defect in a bill with the following remark: 'The conclusion to which a close survey of the authorities will conduct us, seems to be, that there is not any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer.' '' *Harrison* v. *Perea,* 168 U. S. 311, 319.

"By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting, in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill. In the latter case, the proceeding would be oppressive, because it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings with the statement of the several claims of the other defendants with which he has no connection. In the former case, the defendant would be compellable to unite, in his answer and defence, different matters wholly unconnected with each other; and thus the proofs, applicable to each, would be apt to be confounded with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters, when the others might be fully ripe for hearing. Indeed, courts of equity, in cases of this sort, are anxious to preserve some analogy to the comparative simplicity of proceedings at the common law, and thus to prevent confusion in their own pleadings, as well as in their own decrees." Story, Eq. Pl. (9 ed.) pp. 243-245.

"Multifariousness has been frequently defined as consisting in improperly joining in one bill several distinct and independent matters and thereby confounding them,

as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." 21 C. J. 408-409.

"A bill is multifarious which contains the demand of several matters of distinct and independent natures against several defendants, who may be respectively liable, but not as connected with each other. There must be some connection in interest among defendants against plaintiff." 21 C. J. 422-423.

"The partition between the true owners, and a contest between them on the one hand and a stranger on the other hand, who sets up an unfounded claim to an interest in the property, are distinct matters, which have no connection with each other. In one of them—the matter of partition between the true owners—the adverse claimant has no interest. He cannot be brought into a controversy in which he is in no way concerned, merely for the purpose of an adjudication that his claim is unfounded. A bill is multifarious which seeks a partition among the true owners of land, and also a settlement of their legal claim against a mere intruder, who, it is alleged, has no interest in the property, but has been in possession without right, and in receipt of rents and profits. The demurrers, on the ground of multifariousness, should have been sustained." *Bullock* v. *Knox*, 11 So. (Ala.) 339, 340.

"It is well settled that in a foreclosure proceeding the complainant cannot make a person who claims adversely to both the mortgagor and mortgagee a party, and litigate and settle his rights in that case. Barbour, Parties in Equity, 493, and the cases there cited.

"This case was one of fatal misjoinder and multifariousness, and the proper course for Reynolds was to demur. Story, Eq. Pl., sect. 284b." *Dial* v. *Reynolds*, 96 U. S. 340, 341.

"Justice Story, in his compilation upon equity pleading, defines multifariousness in a bill to mean, 'the improperly joining in one bill distinct and independent matters, and thereby confounding them.' And the example by which

he illustrates his definition is thus given: 'the uniting in one bill several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature, against several defendants in the same bill.' Sir Thomas Plumer, V. C., in allowing a demurrer which had been interposed by one of several defendants to a bill on the ground that it was multifarious, remarks, that 'the court is always averse to multiplicity of suits, but certainly a defendant has the right to insist that he is not bound to answer a bill containing several distinct and separate matters relating to individuals with whom he has no connection.' * * *

"Justice Story closes his review of the authorities upon this defect in a bill, with the following remark: 'The conclusion to which a close survey of all the authorities will conduct us, seems to be, that there is not any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer.' " *Shields* v. *Thomas,* 18 How. 253, 260.

"The peculiar aspect given to the bill will make it necessary, if the court fully grant its prayers, (1) to enforce a discovery as against the judgment debtors, (2) to adjudge that the alleged pretense of Boyle that his creditor is the corporation and not the partnership is fraudulent, and (3) to render a personal judgment against Boyle in favor of the complainant, although there is no privity between them. So that the court must take three or more distinct steps, some of a legal and others of an equitable nature, to afford the complete relief asked. Viewed from the standpoint of the complainants and their debtors, that fact might raise no insuperable difficulty; but the strict rights of Boyle are those which we must determine under the stress of his demurrer. As already indicated, it seems to the court that even as to him the action is well brought, so far as it seeks a discovery of assets of the judgment debtors and their subjection to complainants' demand and also for acquiring an equitable lien or levy upon such assets, including any indebtedness of Boyle to the judgment debtors, but that the character of the specific relief sought against Boyle in the second

prayer of the bill makes that pleading multifarious, and not only so, but as to that part of the relief sought the court is without jurisdiction in equity." *Hudson* v. *Wood,* 119 Fed. 764, 778.

"In the case in hand the land company contends, by its demurrer, that it ought not to be required to defend a suit one object of which is to strip it of its lands, on the ground of the complainant's alleged equitable interest therein, and the other of which is to recover damages against another party for the breach of a contract to which the land company is not a party and in which it has no interest. While no hard and fast rule can be given for distinguishing between bills that are and those that are not multifarious, I have been referred to no case where claims so utterly unrelated, and so incapable of being brought together for the enforcement of one general right, have been permitted to stand together in a single bill." *Groom* v. *Wittmann,* 164 Fed. 523, 524.

"The bill thus sets out three separate complaints or causes of action: one against the first firm of Dwinell and Company, another against the second firm of Dwinell and Company, and the third against the firm of Mason and Company. The defendant Annable had no interest in the first firm of Dwinell and Company; he is not responsible for any contracts of that firm, or any frauds it may have committed. So the defendant Dwinell, after he withdrew, had no interest in the new firm of Mason and Company, and is not responsible for its contracts or frauds. Thus the bill sets out independent causes of action in which the defendants have not a common interest. * * * The defendants Dwinell and Annable ought not to be subjected to the disadvantage and expense of meeting and answering charges of fraud against other persons, with whom they have no connection. They are thus exposed, if the plaintiff can join his three different causes of action in one suit." *Sanborn* v. *Dwinell,* 135 Mass. 236, 237, 238.

"A bill is multifarious which embraces distinct matters affecting distinct parties who have no common interest

in the distinct matters." *Metcalf* v. *Cady,* 90 Mass. 587, 589.

"In order that we may appreciate the scope of this bill in equity, it is necessary to make a brief statement of the material facts alleged and of the relief demanded. * * * It is settled law that when the right of a party to specific relief is so incumbered that he cannot assert that right against another until he has removed the incumbrance, he cannot include an attempt to get rid of the incumbrance in a suit for specific relief, which he might be entitled to have, if the incumbrance were out of the way. 1 Daniell's Chancery Pleading & Practice (6th Am. Ed.) 339. Here he wishes to have the stock first called his own, and then have such action taken as might perhaps be demanded if the stock were his own without question at the time of bringing suit. The position is untenable. * * * To settle such right and to ask relief which depends upon the right are two independent, disconnected, and unrelated questions, and the bill which attempts to join them in one suit is multifarious. *Shields* v. *Thomas,* 18 How. 253, 259, 15 L. Ed. 368; *Walker* v. *Powers,* 104 U. S. 245, 26 L. Ed. 729." *Inman* v. *New York Interurban Water Co.,* 131 Fed. 997, 998, 999.

"As a matter of practice, it is said to be 'well settled that in a foreclosure proceeding the complainant cannot make a person who claims adversely to both the mortgagor and mortgagee a party, and litigate and settle his rights in that case.' *Dial* v. *Reynolds,* 96 U. S. 340, 341, 24 L. Ed. 644, citing Barbour on Parties in Equity, 493. The syllabus of the case states very well what the court evidently intended to decide. It is as follows:

" 'A bill of foreclosure is bad, for misjoinder of parties and for multifariousness, where persons are made defendants thereto who claim title adversely to the mortgagor and the complainant, and the latter seeks in that suit to litigate and settle his rights.' " *Grosscup* v. *German Savings & Loan Society,* 162 Fed. 947, 948, 949.

In this proceeding there is no connection between the alleged rights of the petitioner as against each of the respondents and their presence in the one suit is

not necessary to the determination of the whole contro-versy.    As said in *Rumsey* v. *N. Y. Life Ins. Co.*, 23 Haw. 142, 147, 148:

"The application of the rule as to multifariousness is influenced very largely by the circumstances of cases as they present themselves.  *Gov't* v. *Tramways Co.*, 7 Haw. 683.   In the case at bar there is an obvious connection between the alleged rights of the complainant against each of these respondents, and their presence in the one suit is necessary to the determination of the whole con-troversy and in order that the complainant may obtain, if . she be entitled thereto, the full relief sought.   The presence of both claimants of the insurance money in the one suit would seem to be advantageous to the insurance company in that the court would thereby be enabled to determine to which of them rather than the other the money should be paid, and the joinder of the insurance company would not, so far as appears, embarrass Benson, Smith & Company in making its defense, or inconvenience the court in hearing and deciding the case.   *   *   * 'It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others.'  *Brown* v. *Guarantee Trust Co.*, 128 U. S. 403, 412.  'A bill is not multifarious where one general right only is claimed by the bill though the defendants may have separate and distinct interests therein.'  *Castle Estate* v. *Haneberg*, 20 Haw. 123, 130.  A bill between proper parties involving a single subject matter is not multifarious because it prays for different species of re-lief which might be the subject of separate suits.  *Ohera* v. *Ackerman*, 9 Haw. 597; *Carter* v. *Lane*, 18 Haw. 10, 12."

An examination of the authorities shows that courts are always averse to a multiplicity of suits, but certainly a respondent has a right to insist that he is not bound to answer a bill containing several distinct and separate matters relating to individuals with whom he has no connection.   It is apparent indeed, that so far as the

allegations of this bill are concerned, the rights of the Lucases and Scotts arise under the will of Christian Bertelmann, and the rights of the respondents McCandless, Aluli and Lane arise by virtue of conveyances and agreements made to them by the petitioner, and with which the Lucases and Scotts have had nothing to do and are in no way concerned. They have had no connection therewith and are not interested therein. They should not be obliged to answer charges of fraud against other respondents with whom they have nothing in common. Petitioner seeks to quiet title to the land in dispute as against the Lucases and Scotts and at the same time seeks relief for the alleged fraud and failure of consideration against McCandless, Aluli and Lane, who are claiming interests in the same lands adverse to petitioner as well as adversely to the respondents, the Lucases and Scotts.

As we view the situation we are unable to observe any "joint liability," "common interest," or other "connection," between the Lucases and the other respondents, or any "joint liability," "common interest," or "connection" between the Scotts and the other respondents. The Scotts claim title under the Bertelmann will. Their 1/9 interest, however, is separate and distinct from the 8/9 interest claimed by Mrs. Lucas. These respondents' title depends on different considerations. The Scotts are in no way interested in any question relating to the sheriff's deed conveying petitioner's interest in said lands made in 1903, or in any question relating to petitioner's mortgage made to Mrs. Lucas in 1902. Neither are the Lucases interested in the question whether, upon the death of Catherine Scott her interest in the lands in question descended to her children (the Scotts) or whether one or more of the testator's sons had the right to make payment of $5000.00 and acquire Catherine

Scott's interest in the land.  There is no common interest or other connection between the Lucases and the Scotts; their interests are independent of each other and each depends on its own merits.  The averments of the bill clearly show a community of interest between petitioner and the respondents McCandless, Aluli and Lane which is adverse to the several interests of the other respondents in the case, clearly showing the existence of separate, distinct and improperly joined controversies in one bill. The claims set up by petitioner in his bill against the respondents McCandless, Aluli and Lane are clearly equitable claims, while the several claims alleged against the Lucases and Scotts are legal in their nature.

We are of the opinion that the bill being multifarious it cannot be maintained on the theory of avoiding a multiplicity of suits.

"Equity will not take jurisdiction on this ground where there is no necessity for it, as where the legal rules as to joinder of parties and joinder or consolidation of actions permit adequate relief in a single action at law, or where for any other reason there is no necessity for a multiplicity of suits to obtain full relief at law, or where a multiplicity of suits is not threatened, or where by taking jurisdiction a multiplicity of suits would not be avoided.  So a multifarious bill will not be sustained on the ground of preventing a multiplicity of suits." 21 C. J. 73, 74.

"In the case of *Guano Co.* v. *Heatherly,* 38 W. Va. 410, 18 S. E. 611, this court held: 'The bill may be framed with a double aspect, and ask relief in the alternative, but the state of facts on which such relief is prayed must not be inconsistent.  The bill must not be multifarious; that is, two distinct grounds of equitable relief, even between the same parties, are not to be joined in one bill.' A bill to rescind or annul a contract for fraud or illegality, and to enforce the same and require an accounting thereunder, is fatally defective." *Day* v. *National Mut. Bldg. & Loan Ass'n,* 44 S. E. (W. Va.) 779, 780.

"But we take the true rule to be that a party appealing to equity to avoid a multiplicity of suits must still obey the rules of good pleading and steer clear of the vice of multifariousness. The reason that equity takes cognizance in order to avoid a multiplicity of suits is the common sense of it, viz., convenience. Now, convenience within the purview of the rule faces three ways—one face turns toward plaintiffs, one toward defendants, and another toward the court charged with the duty of administering justice, not pell mell or by chance-medley, but in orderly fashion by rule and good sense. Both parties litigant must be considered. If any preference is given to either on mere convenience, it should be to defendants, since plaintiffs go into court voluntarily, defendants (speaking in fireside figures) are pulled in by the ears." *Peniston* v. *Hydraulic Press Brick Co.,* 138 S. W. (Mo.) 532, 535.

"Equity sometimes entertains a bill for the purpose of preventing a multiplicity of suits, but in doing so it does not authorize a bill that is multifarious in character; in fact, it forbids such a bill. * * * A bill aimed to avoid a multiplicity of suits should be between the same parties and relate to or grow out of the same subject." *Fulton* v. *Fisher,* 143 S. W. (Mo.) 438, 443.

The bill fails to disclose any reason or necessity for joining all of the petitioner's alleged causes of action against these respondents in the same suit. Upon the trial the issues there stated between petitioner and the Lucases and those between petitioner and the Scotts, as well as those between petitioner and McCandless, Aluli and Lane would have to be tried just as separately as if they were made in separate suits, for the reason that the nature of those issues, and the evidence concerning them would be entirely distinct and unconnected. In this regard, we adopt the statement of Mr. Justice Peckham in *Hale* v. *Allinson,* 188 U. S. 56, 80:

"Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The

hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. The expense of printing will be large. The costs of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law."

Petitioner in no uncertain terms claims the legal title to 7/9 of the lands in question. He avers that he is the owner "in fee simple absolute of all estates in and to all said lands and all parts thereof." He seeks to have his title quieted, especially against Mrs. Lucas and unites his alleged cause of action against her with his action to remove clouds on his title, the alleged cloud on his said title being the mortgage given by him to Mrs. Lucas in 1902 and the sheriff's deed of his interest in these lands, made in 1903. Petitioner is not in possession of the lands in question. The bill shows that the Lucases, Scotts and the Kilauea Sugar Plantation Company are in possession. Under these circumstances, he will not be permitted to maintain his bill to remove such cloud or clouds from the title and at the same time have his title quieted to other portions of the same land in one suit in equity.

In *Kapuakela* v. *Iaea,* 9 Haw. 555, 557, 558, this court has touched on this question as follows:

"We put the case as follows: Plaintiff asked that the deed be cancelled, alleging fraud. This ground failed. She being out of possession now prays that the grantee of the deed convey her one-half of the premises because she has a legal title to it, and asks the equity court to pass upon this independent question. To enable a party not in possession to maintain a bill to quiet title he must have an equitable title, one that cannot be enforced at law. * * *

" 'When the estate or interest to be protected is equitable, the jurisdiction (of equity) should be exercised, whether the plaintiff is in or out of possession, for under these circumstances legal remedies are not possible; but, when the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of legal remedies. Thus, for example, a plaintiff out of possession, holding the legal title, will be left to his remedy by ejectment under ordinary circumstances.' " (3 Pom. Eq. Jur., Sec. 1399, n. 4.)

For instance, in the case at bar, in what position would the court below be if, following a lengthy hearing, it determined that no fraud had been perpetrated on petitioner by respondents McCandless, Aluli and Lane?

And again in *Charman* v. *Charman,* 17 Haw. 171, 173, the court says:

"The jurisdiction of equity to give relief in matters of quieting title is either by a bill of peace which generally lies only in favor of a person in possession who has already established his title by one or more successful contests at law, or by a bill to remove a cloud, which is to procure the cancelation, delivery up or release of an instrument, incumbrance or claim constituting a cloud on the plaintiff's title which could be used to injure or vex the plaintiff in the enjoyment of his title."

The Supreme Court of the United States in *Frost* v. *Spitley,* 121 U. S. 552, 556, says:

"Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title, and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession, or harassed by suits in regard to that title; and the bill cannot be maintained without clear proof of both possession and legal title in the plaintiff."

And as further observed in *Frost* v. *Spitley, supra:*

"A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for if his

title is legal, his remedy at law, by action of ejectment, is plain, adequate and complete; and if his title is equitable, he must acquire the legal title, and then bring ejectment. *United States* v. *Wilson,* 118 U. S. 86; *Fussell* v. *Gregg,* 113 U. S. 550."

The same question arose in *Boston &c. Mining Co.* v. *Montana Ore Co.,* 188 U. S. 632, 641, 642, where the court says:

"It is also objected that, as a bill of peace or to quiet title, it is defective, because there is no allegation that the complainant was in possession, which is necessary in such a bill. If not in possession, an action of ejectment would lie."

"Equity in such cases has no jurisdiction, unless its aid is required to remove obstacles which prevent a successful resort to an action of ejectment, or when, after repeated actions at law, its jurisdiction is invoked to prevent a multiplicity of suits, or there are other specific equitable grounds for relief. Bills *quia timet,* such as this is, to remove a cloud from a legal title, cannot be brought by one not in possession of the real estate in controversy, because the law gives a remedy by ejectment, which is plain, adequate and complete. This is the familiar doctrine of this court." *United States* v. *Wilson,* 118 U. S. 86, 89.

If we should pass upon the merits of petitioner's several claims, it would be possible for him having included in one action a multitude of disconnected claims against various persons, to thus procure a decision upon the merits of each, and in effect avoid the rule above announced against joining in one action separate and disconnected claims against separate persons.

The second ground of demurrer considered is, that there was no ground of equitable jurisdiction set forth in the amended bill, and petitioner's remedy, if any he had, was at law. The amended bill shows that the respondents Lucases, Scotts and Kilauea Sugar Plantation Company are in possession of the lands in dispute; and

from the record therein there is no apparent reason why they cannot be joined as defendants in an action of eject-ment. The bill shows that an action in ejectment to recover possession of this land is now pending in the first judicial circuit, instituted by the petitioner and the respondents McCandless, Aluli and Lane, as plaintiffs, against the Lucases, Scotts and Kilauea Sugar Plantation Company and others as defendants. Under the provisions of the statute (R. L. 1915, Chapter 153) the necessary defendants could be joined in an action to quiet title at law. This statute allows plaintiffs, whether in or out of possession, to join as defendants all persons who claim interests in the lands, and in such proceedings, the parties are accorded their constitutional right to a jury trial.

*Kahoiwai* v. *Limaeu,* 10 Haw. 507; *Mossman* v. *Dole,* 14 Haw. 369; *Lahaina Agr. Co.* v. *Poaha,* 18 Haw. 494; *Paiko* v. *Boeynaems,* 22 Haw. 237.

Under the Seventh Amendment of the Constitution of the United States, which is in force in this Territory (*Bannister* v. *Lucas,* 21 Haw. 229), parties are entitled to a trial by jury in actions involving legal claims to land. Petitioner's claim to these lands as disclosed by his bill, is derived through his father's will. The respondent, Mary N. Lucas, acquired 7/9 interest in said lands by purchase from petitioner's brothers and sisters. The Scotts claim 1/9 by descent from their mother. The petitioner's alleged claim to these 8/9 interest in the lands in dispute is clearly a legal one which is cognizable only in a court of law.

The authorities in this jurisdiction, as well as else-where, including the decisions of the Supreme Court of the United States, are in harmony on the general principle that in similar cases petitioner has an adequate and complete remedy at law.

"The gist of these statutory provisions is that the several circuit judges may exercise their equity jurisdiction when and only when the party has no plain, adequate and complete remedy at law, whether it be a case of fraud or otherwise." *Makainai* v. *Lalakea,* 24 Haw. 268, 272.

"The jurisdiction in respect to titles of real estate is in courts of common law, which courts of equity should hesitate to invade; especially so in the case at bar, where the plaintiff's title is alleged to be by prescription, and this is traversed by the answer, and therefore the decision of the case depends upon facts and questions peculiarly suitable for trials at law, where parties can have a jury of the country to pass upon the facts." *Kaaimanu* v. *Kanwa,* 3 Haw. 610, 612.

" 'When the estate or interest to be protected is equitable, the jurisdiction (of equity) should be exercised, whether the plaintiff is in or out of possession, for under these circumstances legal remedies are not possible; but, when the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of legal remedies. Thus, for example, a plaintiff out of possession, holding the legal title, will be left to his remedy by ejectment under ordinary circumstances.' This is approved in *Graves* vs. *Ewart,* 11 S. W. Rep. 971 (Mo.) and we hold it to be good law." *Kapuakela* v. *Iaea,* 9 Haw. 555, 558.

"Where the controversy involves merely the legal title to lands there is an adequate remedy at law and the case is not one for the jurisdiction of a court of equity." 21 C. J. 62.

"And the result of the argument is, that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." *Hipp* v. *Babin,* 19 How. 271, 278.

"The title of the plaintiff is legal. It is invoking the concurrent jurisdiction of a court of equity. The

burden is upon the plaintiff to show its right to the equitable remedy sought, and for this reason that it has no adequate remedy at law." *United States Min. Co.* v. *Lawson,* 115 Fed. 1005, 1008.

"It would be difficult, and perhaps impossible, to state any general rule which would determine, in all cases, what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that, where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real. property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury." *Whitehead* v. *Shattuck,* 138 U. S. 146, 151.

"The first is strictly a suit in equity seeking special relief, which only a court of chancery can grant. The second is an action at law for the recovery of real property, with the rents and profits. The two cases are entirely different in their nature, and can be determined where the distinctions between legal and equitable proceedings are maintained, only in separate suits. In the one case, if the allegations of the plaintiff be sustained, the judgment must be declaratory and prohibitory, adjudging that the deed of the sheriff to the defendant constitutes a cloud upon his title, and enjoining the defendant from asserting any claim to the premises under it. In the other case, if the defendant establishes his averments, the judgment must be for the possession of the premises and the rent and profits." *Hurt* v. *Hollingsworth,* 100 U. S. 100, 102, 103.

Petitioner finally claims the aid of a court of equity because he alleges the existence of his mortgage to respondent Mrs. Lucas, made in 1902, which mortgage he

avers "has been more than satisfied by the moneys belonging to petitioner." He avers that said respondent be required to account for the balance due him. He also avers that the sheriff's deed of 1903 is void. It is contended that both these instruments are clouds on petitioner's title to his original 1/9 interest in said lands and should be removed and his title quieted in these proceedings. This contention is untenable. If the deed of 1903 is void, no title passed by it, to Mrs. Lucas, and this fact can be shown either at law or in equity. It could be shown in an ejectment suit as well as in an action to quiet title under the statute. In either instance, both parties have a constitutional right to a trial by jury. This proposition is sustained by the supreme court of Hawaii as well as the Supreme Court of the United States.

"We cannot give our assent to the contention of counsel for the defendant that, because in this Territory the jurisdictional distinction between law and equity is maintained, relief against conveyances made in fraud of creditors can be had only on the equity side of the court. Such fraudulent transfers are void at law as well as in equity." *Dee* v. *Foster,* 21 Haw. 1, 3, 4.

"The complainant being out of possession is in position to, at any time, bring an action of ejectment and therein litigate the title to the land, including the question of the alleged forgery. A forged deed is void and passes no title." *Palau* v. *Helemano Land Co.,* 22 Haw. 357, 361.

"He alleges that he is the owner in fee, as trustee, of certain described lands in Iowa, and his injuries consist in this: that the defendants are in the possession and enjoyment of the property, claiming title under certain documents purporting to transfer the same, which are fraudulent and void. If the owner in fee of the premises, he can establish that fact in an action at law; and if the evidences of the defendants' asserted title

are fraudulent and void, that fact he can also show. There is no occasion for resort to a court of equity, either to establish his right to the land or to put him in possession thereof." *Whitehead* v. *Shattuck,* 138 U. S. 146, 150.

"Notwithstanding the statement of the bill respecting the illegal and fraudulent use of the ancient grants produced, and the alleged illegal proceedings of the department, the bill avers the possession by the complainant of a legal title to the premises. Whether that title can be enforced against other claimants will depend of course upon the validity of the ancient grants produced, and of the proceedings by which Louisiana is alleged to have acquired the property. That can be shown in an action at law as well as in a suit in equity." *Smyth* v. *N. O. Canal & Banking Co.,* 141 U. S. 656, 660.

"The allegation of fraudulent proceedings respecting the acquisition of the title does not convert an action at law into a suit in equity. The title stated is merely legal, and as was said in the case of *Hipp* v. *Babin,* 19 How. 271, 277, where an ejectment suit in equity was sought to be sustained: 'The evidence to support it appears from documents accessible to either party; and no particular circumstances are stated, showing the necessity of the courts interfering, either for preventing suits or other vexation, or for preventing an injustice, irremediable at law.' " *Id.,* 661.

If petitioner's title to his original 1/9 interest is good at law, and he is able to show it in either form of legal proceedings as hereinbefore indicated, we are unable to see any reason why he should be prevented from showing that the lien created by his said mortgage of 1902 has been satisfied, thereby obtaining complete relief at law so far as said mortgage is concerned. The allegations of the bill may be sufficient to entitle petitioner to some equitable relief as far as it may affect said mortgage and petitioner's relations with Mrs. Lucas thereunder. This, however, does not entitle petitioner in this

proceeding to litigate several major claims properly cognizable only at law which are united in the same pleadings with a minor claim for equitable relief.

"The Constitution, in its Seventh Amendment, declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' In the Federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the Federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact.

"In the case before us the debt due the complainants was in no respect different from any other debt upon contract; it was the subject of a legal action only, in which the defendants were entitled to a jury trial in the Federal courts. Uniting with a demand for its payment, under the statute of Mississippi, a proceeding to set aside alleged fraudulent conveyances of the defendants, did not take that right from them, or in any respect impair it." *Scott* v. *Neely,* 140 U. S. 106, 109, 110.

"It follows from the views expressed that the court below could not take jurisdiction of this suit, in which a claim properly cognizable only at law is united in the same pleadings with a claim for equitable relief." *Id.,* 117.

"If it be held that there is no trust, then it follows that the suit cannot be maintained in equity on the sole ground of fraud. Such a ground for the maintenance of the suit (even if complainant could otherwise maintain it) is a mere incident to the main ground set forth in the bill. Equity does not now take jurisdiction in cases of fraud where the relief properly obtainable on that ground can be obtained in a court of law, and where, so far as necessary, discovery may be obtained as well

as in equity." *Equitable Life Assur. Soc.* v. *Brown,* 213 U. S. 25, 50.

"Nor can the court maintain jurisdiction in equity upon the alleged necessity for an accounting. This has been long settled. *Hipp* v. *Babin,* 19 How. 271-278, 15 L. Ed. 633. In that case the Supreme Court, through Mr. Justice Campbell, said:

" 'Nor can the court retain the bill, under an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits, and improvements. The rule of the court is that when a suit for the recovery of the possession can be properly brought in a court of equity, and a decree is given, that court will direct an account as an incident in the cause. But when a party has a right to a possession, which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction.' " *Bearden* v. *Benner,* 120 Fed. 690, 694.

"The only issue left was as to the title to the easement. The court of equity had no jurisdiction to try this issue and the respondents are entitled to have it tried at law before a jury. The proceeding is devoid of any equitable features. It is true that when, as in *Kuala* v. *Kuapahi,* 15 Haw. 300, the 'case is not without traces of equity jurisdiction' or when, as it is sometimes expressed, 'the case is not wholly foreign to equity jurisdiction' or 'when it is not on its face such that equity could have no jurisdiction over it' or 'when the defect is a want of equity and not a want of power' or 'when equity is competent to grant the relief sought and has jurisdiction of the subject matter,' the objection of an adequate remedy at law is deemed to be waived and comes too late when made in the appellate court for the first time; but it is equally well settled that when the suit is 'practically an ejectment bill to recover the possession of land' the appellate court may and should *sua sponte* reverse the decree below and direct a dismissal of the bill even though the objection of absence of jurisdiction was not raised by demurrer, plea or answer or suggested by counsel." *Waal* v. *Sakagi,* 27 Haw. 609, 612, 613.

It therefore follows from the views here expressed that the court below could not take jurisdiction of this suit in which several claims against separate persons properly cognizable only at law are united in the same bill with various claims for equitable relief against a number of respondents setting out independent causes of action against certain of the respondents in which some of them have not a common interest.

An examination of the bill discloses that there is a misjoinder of parties respondent and a uniting of several distinct, unrelated and disconnected causes of action, to say nothing of the inconvenience upon a hearing to the court, numerous counsel and many respondents. The bill is therefore multifarious.

We are of opinion that the several demurrers of respondents to petitioner's amended petition and bill should have at least been sustained on the grounds herein stated.

The decree of the circuit judge dismissing the bill herein is therefore sustained.

*H. Hathaway* and *N. D. Godbold* (*Hathaway & Godbold, Watson & Lymer* and *C. F. Clemons* on the briefs) for petitioner.

*A. G. M. Robertson* (*Robertson & Castle* on the brief) for respondents Mary N. Lucas and Charles Lucas.

*W. F. Frear* (*Frear, Prosser, Anderson & Marx* on the brief) for respondent Kilauea Sugar Plantation Company.

*E. A. Mott-Smith* (also on the brief) for respondents Janet M. Scott, Rubena F. Scott and Bishop Trust Company.

*U. E. Wild* (*Smith & Wild* on the brief) for respondent McCandless.

*N. W. Aluli* (also on the brief) in propria persona and for respondent Lane.