FRANK C. BERTELMAN and HENRY G. BERTELMAN,
    *v.* SUSAN ·· BERTELMAN KAHILINA; HELEN
    SMITH, wife of WILLIAM SMITH and WILLIAM
    SMITH her husband; ANGELINE MOSSMAN, wife of
    · HARRY MOSSMAN and HARRY MOSSMAN her hus-
    band; MINNA HALL, wife of WILBUR HALL and
    WILBUR HALL her husband; HATTIE BANNISTER,
    wife of ANDREW BANNISTER and ANDREW BAN-
    NISTER her husband.

## ORIGINAL.

SUBMITTED JUNE 13, 1902.          DECIDED JULY 29, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A testator devised certain land, which was subject to a 25 year lease at
    a rental of $6,000 a year, to his wife, three sons and six daughters,
    · as follows: (1) To his wife a life estate of $2,000 or, in case of a
    change in the lease, one-third the net income, and, in case of her
    death, said $2,000 a year or one-third to be equally divided among
    all his children or surviving children, and to each of the children
    or surviving children an equal share of the remaining $4,000 or
    two-thirds of the income; (2) * * * (3) At the expiration of the
    lease, to his sons or *then* surviving sons or son, the land, provided
    such sons or son should then pay $5,000 to each of the daughters or
    surviving daughters, but, in case one or two of the sons should be
    unable to pay such amounts within a year from that time, the other
    son or sons to have the right to buy the whole by paying (a) to
    each daughter or surviving daughter $5,000, (b) to the short-coming
    son or sons each $5,000, and that by doing so the sons or son will
    enter into full possession, and their or his right and title be undis-
    putable, provided they comply with the said conditions, and (c) to
    the wife, a life rent of $2,000 a year, to be a charge on the estate;
    (4) Should none of the sons be able to pay these amounts, then the
    land to be sold or leased again according to the best interests of
    the family, the proceeds to be equally divided among the children

or their lawful heirs and assigns, after the distributive share of dower is given to the wife. The wife and all the children survived the testator. Held,

The widow took a life estate in one-third the land, subject to be divested upon the performance of the conditions prescribed in the third item, in which case she would thereafter have a fixed sum of $2,000 a year, which would be a charge on the land.

The children took, subject to the widow's interest, equal estates until the expiration of the lease, with vested remainders in fee, the former merging in the latter so as to make present vested estates in fee, defeasible as to the interests of the daughters and short-coming son or sons upon the performance of the prescribed conditions by the other son or sons, the sons meanwhile having contingent executory devises as to such interests.

### OPINION OF THE COURT BY FREAR, C.J.
### (Perry, J., dissenting.)

The question is one of the construction of a will. The material parts of the will and other facts are set forth in the dissenting opinion of Mr. Justice Perry.

There are three classes of devisees—the testator's wife, his sons, and all his children, comprising three sons and six daughters. The question is, what interests have they under the will?

As to the wife, there seems to be little or no doubt. The first item of the will clearly gives her a life estate in one-third of the land in question. The fourth is in harmony with this. But upon the happening of certain contingencies set forth in the third item her estate may be divested, in which case she would thereafter have in place thereof a fixed yearly sum which would be a charge on the land, to be paid by the son or sons who would take the whole land under that item upon the happening of such contingencies.

As to the children, they have equal vested interests under the first item, subject to the widow's interest, until the expiration of the lease to the Kilauea Sugar Company. The main question is, what have they after that under the third and fourth items?

As to the sons, in so far as they take under the third item, they take, subject to the charge in favor of the widow, a fee—whether

defeasible or indefeasible, vested or contingent, by way of remainder or executory devise, remains to be seen.

If the payments prescribed in that item are conditions precedent, they of course cannot have a vested interest under that item until they perform the conditions, and the vesting of their estates will necessarily be contingent upon such performance. In such case they would take by way of contingent executory devise, to vest and take effect in possession upon such performance and at the same time divest the daughters and short-coming sons or their heirs of any interests that they might otherwise have either under the fourth item of the will or by descent. Whether such other interest would be by devise or descent would depend upon whether the devise in the fourth item would vest at or before the expiration of the lease or on non-payment by the sons within a year thereafter, that is, according to whether the children would take under the fourth item immediately by way of remainder subject to be divested or by way of executory devise a year after, holding meanwhile as heirs.

If those payments are conditions subsequent, the sons take under the third item by way of remainder, to take effect in possession immediately upon the expiration of the lease and to be subject to be divested, upon non-performance of the conditions, in favor of the devisees under the fourth item. Such remainder would be contingent. For, although courts lean strongly in favor of early vesting, they must yield to the clearly expressed intention of the testator. In this case the devise, to take effect in possession at a future time, being to the sons "or *then surviving* sons or son", it is impossible to say until that time arrives which sons, if any, will be entitled to take under that description, and, in order that a remainder may be vested, it is necessary not only that it be capable of taking effect in possession whenever the particular estate may determine, but that there be a person in being and ascertained who answers the description of the remainderman at some time during the continuance of the particular estate and not merely at its termination. 20 Am. & Eng. Enc. of Law, 838 *et. seq.* and notes; 2 Underhill, Wills, § 865.

Here the contingency is inherent in the description of the devisees. There is not even a direct devise to all the sons with a divesting clause or devise over in the event of the death of one or more during the prescribed period.

In any event, therefore, until the expiration of the lease, the sons would have, so far as the third item is concerned, only a contingent interest. And this perhaps would be as far as it would be necessary to go in this case if this item alone were concerned. But it will be necessary to decide what all the children take under the fourth item, and in doing so it will be necessary or at least convenient to say further whether the payments are conditions precedent or subsequent and therefore whether the sons would take under the third item by way of remainder or executory devise.

All the children take a fee, of course, under the fourth item, in so far as they take at all under that item. There is no conversion of the land into money, for the direction to sell is not imperative. Nor does the fact that there is only a direction to sell or lease and divide the proceeds at a future time, without any express devise, prevent there being a devise or even a present vested remainder. 2 Underhill, Wills, § 866.

Under this item the children must take either a vested or contingent remainder or a contingent executory devise. It could not be a contingent remainder; for to be a remainder at all, it would have to take effect in possession, if at all, immediately upon the expiration of the lease, but the only contingency—nonpayment by the sons—that would make it a contingent remainder, if at all, might happen at any time within a year after the expiration of the lease.

The estate therefore must be either a vested remainder subject to be divested upon the performance of the condition by the sons or else a contingent executory devise to vest and take effect in possession, if at all, a year after the termination of the lease in case the sons fail to perform the condition within that year. Which is it?

With the exception of the argument based on the direction to

sell or lease and divide at a future time, which, as we have seen, is by no means conclusive, the arguments all seem to favor the theory of a vested remainder as against a contingent executory devise.

In general there is a strong presumption in favor of early vesting. There is a strong presumption in favor of a remainder as against an executory devise. There is a strong presumption against intestacy as to a portion of the estate—in this case for the short period from the expiration of the lease to the performance of the conditions in case they are performed or the end of the year in case they are not performed. There is a strong presumption that a condition imposed merely for convenience is not intended to delay the vesting of an estate, that is, is not intended as a condition precedent to the vesting, even if it should be to the enjoyment. Here the children would take under the fourth item immediately but for the allowance of a year to the sons in which to make the prescribed payments, and that time is allowed for the sons' convenience and not for the purpose of postponing all the children.

The will itself contains nothing to clearly rebut these presumptions but on the contrary supports the view that the children were intended to take immediately upon the expiration of the lease rather than a year later. All three of these items show an intention on the part of the testator to treat all the children equally as to quantity of interest. The first and fourth items express this intention as clearly as it can be expressed. The third item merely gives the sons a privilege of obtaining all the land, but only on condition that they compensate the others for what they would otherwise have in the land. It is little more than one method of division. Accordingly, it would seem that the intention was to leave the land to all, subject to the exercise of the option by the sons, rather than to leave it to the sons subject to go over to all in case the sons should not exercise their option. The third item strongly bears out this idea. It shows that the payments therein prescribed are conditions precedent, in which case the sons could not take by way of remainder at all under

that item. They could take under that only by way of contingent executory devise. The form of the proviso and its annexation to the devise itself, instead of being inserted in a subsequent clause, favor this construction. Moreover, even after the expiration of the lease it may not be known for a year which, if any, of the surviving sons will be able or willing to make the payments. The provision for the payments to the others, the short-coming sons as well as the daughters, also favors this construction. This and the use of the word "buy" tend to show that the testator thought the daughters and short-coming sons already had an interest to be in a certain sense bought out. The sons may buy "the whole", as if they would not otherwise then have the whole, or as if the others already had some. And it is only "by doing so", that "they my sons, or he my son, will enter into *full* possession of *all* my lands, and their or his right and title will be *undisputable*, provided they or he (my son or sons) comply and fulfill the above mentioned conditions." A distinction is made also between the payments to the other children and those to the widow. The latter are merely charges on the land and may extend over a period of years, and no express words of condition are set forth in connection with them, while the former are intended to be single payments respectively to be made within a limited time and are put in the form of express conditions. The sons would then at most take, not a contingent remainder, but only a contingent executory devise under the third item.

Again, if there is any distinguishing feature in the results as between vested and contingent interests, it is that a vested interest passes from the designated devisee to his heirs or assigns, while a contingent interest does not. Now, this distinction between an interest that would pass by descent or devise or conveyance even before the estate might take effect in possession and one that would not so pass, is apparently just what the testator had in mind, as to the estate of all the children under the fourth item, for he there directs the division to be made among all the "children or their heirs and assigns," as if they could devise or convey their respective interests before the period of distribution or tak-

ing effect in possession or as if, in case they did not do so, their interests would pass to their heirs by descent in case of their death before such period. If such is the case, the children must have a vested estate.

The foregoing considerations favor the view that the sons would take a contingent executory devise as against a contingent remainder under the third item; that all the children would take a vested remainder under the fourth item as against a contingent remainder in the sons under the third item; that under both items all the children would take a vested remainder, subject to be divested as to the daughters and short-coming sons in favor of the other sons upon their performance of the prescribed conditions as against the view that all the children on the one hand and the sons on the other hand take alternate contingent executory devises with a possible intermediate period of intestacy.

But since all the children have vested estates until the expiration of the lease as well as vested, though defeasible, remainders after that, the lesser estates are merged in the greater and all the children have present vested estates in fee defeasible as to the interests of some of them upon the others' performance of the conditions prescribed. And this would seem to be the intention of the testator as shown in all three clauses of the will. He meant to give the land to all his children equally, subject to the widow's interest, and, as one method of division after the expiration of the lease, to give the sons the option of obtaining the whole upon making proper payments in money to the others.

The questions are therefore answered as follows:

The widow has a life estate in one-third of the land, subject to be divested by the performance of the conditions prescribed in the third item, in which case she will thereafter have a fixed sum of $2,000 a year, which will be a charge on the land.

The children have equal vested estates in fee, subject to the widow's interest, defeasible as to the interests of the daughters and short-coming sons upon the performance of the prescribed

conditions by the other son or sons, the sons having meanwhile contingent executory devises as to such interests.

*Geo. A. Davis* and *F. M. Brooks* for plaintiffs.

*Andrews & Andrade* for defendants.

### DISSENTING OPINION OF PERRY, J.

This is a submission, under the statute, upon an agreed statement of facts.

On December 12, 1891, one Christian Bertelmann, of Pilaa, Kauai, executed a will containing, among others, the following provisions: "First. In consideration of Agreement and Lease of all my lands (except 100 acres actually fenced off and two acres of taro land at Kahili), made by myself with the Kilauea Sugar Company, Limited, for the term of 25 years, commencing November 1st, 1890 and ending Nov. 1st, 1915, at the rate of $6,000.00 per annum, payable quarterly in advance, I make the following Arrangements.

"I give, devise and bequeath said rents as follows:

"1st. To my lawful wife, Susan C. Bertelmann, a life rent of two thousand dollars ($2,000.00) yearly, payable quarterly, being one-third of above mentioned rent of six thousand dollars ($6,000.00) or in case of any possible change in the actual agreement with the Kilauea Sugar Company, an equivalent of one-third of all net receipts or income of lands now rented to Kilauea Sugar Company. In case of Susan Bertelmann's death the above mentioned income of $2,000.00 a year, or equivalent of one-third as her distributive share of Dower would be equally divided amongst my children or surviving children.

"2nd. To each and every one of my children or surviving children an equal share of the four thousand dollars ($4,000.00) or the remaining two-thirds of the total income, deriving from the rent of my lands to the Kilauea Sugar Company or equivalent thereof."

"Third. At the expiration of twenty-five years' lease to the Kilauea Sugar Company, it is my sincere wish and will that my land should befall in equal shares and interest upon my three sons:—Frank Charles, Henry Godfrey and Christian Sylvester Bertelmann or then surviving sons or son, provided, however,

that at such a time these my sons or son, shall to pay to each one of my daughters or surviving daughters the sum of five thousand dollars ($5,000.00). In case one or two of my sons should be at that time, or within a year from that time unable to furnish, produce or raise the necessary amount to pay to each one of my daughters or surviving daughters his share of the five thousand dollars ($5,000.00) per capita, the two or the one of my sons will have a right to buy the whole of my lands now leased to the K. S. Co. by paying:—

"1st. To each of my daughters or surviving daughters the amount aforesaid of five thousand dollars ($5,000.00).

"2nd. To my short-coming son or sons, the same amount of five thousand dollars ($5,000.00) each, being the same share as will be paid to my daughters. By doing so, they my sons, or he my son, will enter into full possession of all my lands, and their or his right and title will be undisputable, provided they or he (my son or sons), comply and fulfill the above mentioned conditions.

"3rd. To my wife, Susan Bertelmann, a life rent of two thousand ($2,000.00) per annum, I make the payment of all these amounts above given a charge from all my estate.

"*Fourth.* Should none of my sons be able to pay these amounts, then my lands will be sold at public auction, or leased over again according to circumstances and best advantage of my family. The money deriving from said sale or lease will be fully divided amongst my children or their lawful heirs and assigns after the distributive share of Dower will have been given to my wife, Susan Bertelmann according to law."

By other clauses of the will, which clauses are not now in dispute nor material to be considered, the testator made specific disposition of the one hundred acres and the two acre tracts mentioned in the first clause. The testator died March 15, 1895, being at the time of his death seized of the lands referred to in the will.

Christian Bertelmann left surviving him his widow, three sons and six daughters. The plaintiffs are two of the sons, the defendants Helen Smith, Angeline Mossman, Minna Hall and Hattie Bannister are four of the daughters and the defendant Susan Bertelmann Kahilina is the widow, named in the will as Susan Bertelmann.

The claims of the parties are thus stated in the submission: "That Frank C. Bertelmann and Henry G. Bertelmann claim that they, the said Frank C. Bertelmann and Henry G. Bertelmann, own two undivided thirds in fee simple of the said estate under said will, and the said Susan Bertelmann Kahilina; Helen Smith, wife of William Smith and William Smith her husband; Angeline Mossman, wife of Harry Mossman, and Harry Mossman her husband; Minna Hall, wife of Wilbur Hall, and Wilbur Hall her husband; Hattie Bannister, wife of Andrew Bannister, and Andrew Bannister her husband, claim that the said Frank C. Bertelmann and Henry G. Bertelmann own no such interest in the said estate, but that they, the said Frank C. Bertelmann and Harry G. Bertelmann own, and are well entitled to, two undivided ninths of the said estate under the said last will and testament of Christian Bertelmann, deceased; that they, the said Helen Smith, wife of William Smith, and William Smith her husband; Angeline Mossman, wife of Harry Mossman, and Harry Mossman her husband; Minna Hall, wife of Wilbur Hall, and Wilbur Hall her husband; Hattie Bannister, wife of Andrew Bannister, and Andrew Bannister her husband, own and are well entitled to four undivided ninths in the said lands and premises under the said last will and testament of Christian Bertelmann, deceased; that the said Susan Bertelmann Kahilina owns and is well entitled to her dower as set forth in the said last will and testament of the said Christian Bertelmann, deceased."

The questions submitted are:

"1st. What right, title or interest, have the said Frank C. Bertelmann and Henry G. Bertelmann, by, through, or under the said last will and testament of Christian Bertelmann, deceased?

"2d. Further, what right, title or interest have the said Susan Bertelmann Kahilina, Helen Smith, wife of William Smith, and William Smith her husband; Angeline Mossman, wife of Harry Mossman, and Harry Mossman her husband; Minna Hall, wife of Wilbur Hall, and Wilbur Hall her husband, and Hattie Bannister, wife of Andrew Bannister, and Andrew Bannister her husband, by, through, or under the said last will and testament of said Christian Bertelmann, deceased?"

On behalf of the plaintiffs the main contention is that the three sons of decedent "took a vested interest in the realty in fee subject to be divested as to any of them in the event of their death before the expiration of the lease or upon their failure to pay the legacies provided in the will" and that their interest was "a vested remainder expectant, subject to a condition, the violation of which would forfeit their estate."

I respectfully dissent from the construction given the will by the majority. It is doubtless an elementary rule of the construction of wills that no remainder will be construed to be contingent which may consistently with the intention of the testator be deemed vested, and that the law favors the earliest possible vesting of estates and favors a remainder as against an executory devise. Still, an interest must be construed to be contingent if it is clearly so expressed and if it is necessary to do so in order to carry out the intention of the testator. So also, under like circumstances, the other less favored constructions must be adopted.

A remainder is contingent "when it is so limited as to take effect to a person * * * not ascertained, or upon an event which may never happen." *Woodman v. Woodman*, 89 Me. 128. In the case at bar, the remainder, if any, is, in my opinion, contingent. The devise expressed in the third clause, to take effect at the expiration of the 25 years lease to the Kilauea Sugar Co., is to the three sons, Frank, Henry and Christian, "or then surviving sons or son." In order to take, each taker must be alive at the time named. It is impossible to ascertain now which one or more of the sons will be alive at that time. There is an uncertainty as to whether any of the sons and as to what one, if any, will ever have the right to the enjoyment of the estate. See *Bailey v. Hoppin*, 12 R. I. 560, 567. For this reason alone, the remainder cannot be a vested one.

The argument is advanced that the remainder must be held to be vested rather than contingent because no disposition of the land is otherwise made for the period prior to the expiration of the lease. This position, I think, cannot be upheld. By the first clause of the will, all of the rents of the land, for the period re-

ferred to, are disposed of for the benefit of the widow and children in stated proportions. This is the equivalent of a devise of the land itself for that time,—an estate for years. See 3 Wash. Real Prop. 382; *Earl v. Rowe*, 35 Me. 414, 419; *Reed v. Reed*, 9 Mass. 372, 373; *Caldwell v. Fulton*, 31 Pa. St. 475, 479.

Another reason for regarding the remainder, if any, as contingent and not as vested, is that the testator has named another condition precedent to the vesting of the estate. Whether that condition will be performed or not, is uncertain. The condition referred to is that the surviving son or sons pay to the surviving daughters and to any delinquent son the sum of $5,000 each at the expiration of the lease or within one year thereafter. That the provision in question was intended as a condition, is not disputed; but it is contended that the condition is subsequent. Whether a condition is precedent or subsequent is a question of construction to be determined in view of the language of each particular will. As usual, it is the intention of the testator which is to be sought. If from the language used it is clearly evident that the testator intended "that a devisee to whom property is given should perform some act prior to the vesting of the estate, and without the performance of which it will not vest, the condition is precedent. Until it is performed the devisee has no title." See 1 Underhill on Wills, Section 483. In stating what the devise to the sons is, and in the same sentence, the testator in the case at bar says, "provided, however, that at such a time these my sons or son, shall pay to each one of my daughters", etc. Immediately following this is an alternative provision to be good in case one or two of the sons are unable to pay, and that is that the other two or one may have the whole property by paying to the delinquent son or sons as well as to the daughters the sums named. "By doing so", continues the testator, "they my sons, or he my son, will enter into full possession of all my lands, and their or his right and title will be undisputable", again adding, as if to emphasize the point, *"provided they or he (my son or sons) comply and fulfill the above mentioned conditions."* The obvious meaning of this is that if the conditions are not complied

with, the sons will not have any right or title to the lands under this clause. Proceeding still further, the testator provides for the contingency of *none* of the sons being able to pay. In that event, he says, they are to be "sold at public auction or leased" and the proceeds divided among all the children after dower has been given the widow; in other words, in that event the lands, not yet vested in the sons, are not to go to them alone but to them and to certain other persons.

The intention of the testator seems to me to be clear. In view of the fact, however, that the sons are allowed one year after the expiration of the present lease to the Kilauea Sugar Co. within which to pay the amounts stated, and that a period of time may elapse between the determination of the particular estate and the vesting of the interest of the sons, it may be that the testator's intention cannot be carried out on the theory of a contingent remainder. If that is so, the limitation can, nevertheless, be supported as an executory devise. See 4 Kent Com. p. 264 *et seq.*; 1 Bouvier's Dict. 733; 1 Underhill on Wills, Sect. 874 *et seq.* In the interval, if any, between the determination of the particular estate and the taking effect of the limitation over, the fee will be in the testator's heirs, in the absence of a residuary clause. See 4 Kent Com. 270, 284.

The contention of the defendants seems to be, in effect, that a vested remainder is devised to the daughters, with power to sell to the sons only, and that this restriction upon the power of alienation is invalid. I think that to so construe the language of the will would do violence to the intention of the testator. The mere use of the word "buy" in the first paragraph of the third clause, above quoted, cannot have the effect contended for. The word was there used evidently in the sense of "acquire title to." If the argument of defendants were good at all, that the power or right to "buy" from the daughters presupposes a devise of the fee to the daughters, then such devise would of necessity be regarded as having been to the "short-coming sons" as well as to the daughters. Such a construction, to-wit, that each of the daughters and each of the short-coming sons has a vested re-

mainder, subject though it be to being divested, finds no support in the language of the will. If any vested remainder whatever could be held to have been given, it would be to each of the nine children. The latter however, was not, as it seems to me, intended by the testator. If it had been, then certainly after he had once caused such estates to be vested in each and all of his nine children, he would not have permitted a divesting of any of such interests in favor of some or all of the sons without providing some compensation therefor. Yet, what he said was that the surviving son or sons shall have the whole property, not by paying to the surviving daughters and short-coming sons *and to the heirs of any deceased daughter and to those of any deceased son,* but by paying to the surviving daughters (meaning daughters surviving at the expiration of the lease and not at the death of the testator) and to the short-coming sons only. This strongly supports the view that as between the three sons on the one hand and the nine children on the other the devises were of alternate contingent remainders or, at least, of alternate contingent executory devises. In other words,—and the testator wrote the four clauses in their natural order—if the sons pay the surviving daughters and short-coming sons, they shall have all the property; if they do not so pay, the nine children shall have it all. If the testator omitted to provide, in certain contingencies, for the heirs of deceased sons or daughters, the court cannot remedy the defect. As I understand the majority opinion, it is not therein decided whether or not the condition named in the third clause requires the payment by the surviving sons of $5,000 to the heirs of any deceased son or daughter in order to defeat what is adjudged to be the vested interest of each son and daughter.

The use of the word "assigns" in the fourth clause is not sufficient, I think, to overcome the indications contained in the other parts of the will showing that the devise was intended to be of contingent interests; nor is it inconsistent therewith. "Heirs" and "assigns" were named by the testator in that clause as persons to take by way of substitution for those dying or assigning, respectively, before that time. A conveyance of a contingent re-

mainder, if for a valuable consideration, would be enforced at least in equity and would operate by way of estoppel to pass the interest or possibility of interest of the grantor to the assignee. There are authorities even to the effect that contingent remainders are alienable. See, for example, *Belcher v. Burnett*, 126 Mass. 230, 231; *Drake v. Brown*, 68 Pa. St. 223, 225.

The questions submitted should be answered as follows: (1) The widow is entitled, (a) to a one-third interest in the land until the expiration of the lease to the Kilauea Sugar Company, (b) in case one or more of the sons pay as provided in clause 3, to a life rent of $2,000 per annum secured by a charge upon the property, and (c) if none of the sons pay as provided by clause 3, to a life estate in one-third of the land.

(2) Until the expiration of the present lease to the Kilauea Sugar Company, each of the children of the testator is entitled to an equal share of the remaining two-thirds interest in the land.

(3) At the expiration of said lease, the son or sons at that time surviving, will, provided he or they pay $5,000 to each of the daughters then surviving, and to each of the "short-coming" sons, if any, take the fee of the said lands, either as contingent remaindermen or by way of executory devise, subject to the charge in favor of the widow. In that event, the then surviving daughters and short-coming sons, if any, will be entitled to the sum of $5,000 each and no more.

(4) During the period, if any, intervening between the expiration of the present lease and the compliance by the son or sons with the condition as to payment, the heirs of the testator will be entitled to the land as provided by law, subject to the widow's right of dower.

(5) If none of the sons comply with the condition of clause 3, then, subject to the widow's life estate, all the land goes to the nine children.