## BERTELMANN et al. v. LUCAS et al.

Circuit Court of Appeals, Ninth Circuit.
April 1, 1929.

Rehearing Denied May 6, 1929.

No. 5612.

See, also, 239 F. 450; 7 F.(2d) 325.

Smith, Wild & Hoppe, Arthur G. Smith, Urban E. Wild, Arthur S. Hoppe, Heen & Godbold, William H. Heen, and Norman D. Godbold, all of Honolulu, Hawaii, for appellants.

Robertson & Castle and A. G. M. Robertson, all of Honolulu, Hawaii, for appellees Lucas.

Prosser, Anderson & Marx, Mason F. Prosser, Robbins B. Anderson, Benjamin L. Marx, and Heaton L. Wrenn, all of Honolulu, Hawaii, for appellee Kilauea Sugar Co.

E. A. Mott-Smith, of Honolulu, Hawaii, for appellees Scott and others.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is an action of ejectment commenced in a circuit court of the territory of Hawaii, resulting in a judgment for the defendants. An appeal was taken to the Supreme Court of the territory, and the judgment affirmed, and hence this appeal.

The common source of title to the property in controversy is the last will and testament of Christian H. Bertelmann, the father of the appellant Frank C. Bertelmann. The will was executed on the 12th day of December, 1891, and the testator died on the 15th of March, 1895. He left surviving him three sons and six daughters. At the time of his death the property in question was under lease to the Kilauea Sugar Company for 25 years, beginning November 1, 1890, and ending November 1, 1915. By his will the income from the lease, amounting to $6,000 per annum, was bequeathed to the wife and children, $2,000 to his wife, and the remainder in equal portions to his children. The property here involved was devised as follows: "Third. At the expiration of the 25 year lease with the Kilauea Sugar Co. it is my sincere wish and will that my lands shall befall in equal shares and interest upon my three sons: Frank Charles; Henry Godfrey and Christian Sylvester Bertelmann or then surviving sons or son. Provided however that at such time these my sons or son shall pay to each one of my daughters or surviving daughters the sum of five thousand dollars ($5000). In case one or two of my sons should be at that time, or within a year from that time unable to furnish, produce or raise the necessary amount to pay to each one of my daughters or surviving daughters his share of the $5000.00 per capita, the two or the one of my sons will have a right to buy the whole of my lands now leased to the K. S. Co. by paying: 1. To each of my daughters or surviving daughters the amount aforesaid of $5000.00. 2. To my shortcoming son or sons the same amount of $5000.00, being the same share as will be paid to my daughters. By doing so, they my sons or he my son will enter in full possession of all my lands; and their or his right and title will be undisputable, provided they or he (my sons or son) comply and fulfill the above mentioned conditions. 3. To my wife Susan Bertelmann a life rent of $2000.00 per annum. I make the payment of all these amounts above given a charge upon all my estate. Fourth. Should none of my sons be able to pay these amounts, then my lands will be sold at public auction, or leased over again, according to circumstances and best advantage of my family. The money deriving from said sale or lease will be equally divided amongst my children or their lawful heirs and assigns after the distributive share of dower will have been given to my wife Susan Bertelmann according to law."

The widow of the testator died in September, 1915, and her interest in the estate thereby terminated, and need not therefore be further considered.

In July, 1902, the will was before the Supreme Court of Hawaii for construction, and

it was held that the children of the testator took equal vested estates in fee in the property defeasible as to the interests of the daughters and short-coming sons upon the performance of the conditions therein stipulated by the other son or sons; they being in the meantime contingent executory devisees of such interests. Bertelman v. Kahilina, 14 Hawaii, 378.

After this decision and prior to the expiration of the lease to the sugar company, the appellee Mrs. Lucas purchased the interest of four of the daughters and two of the sons, and later purchased the interest of another daughter. One of the daughters, Mrs. Scott, died after the death of the testator, and her interest descended to her three minor children.

In August, 1920, the appellant. Frank Bertelmann mortgaged his interest in the property to the appellee Mrs. Lucas for $9,-845, assigning his share in the rents to be received from the sugar company. His share in the rents was not sufficient to pay the interest on the mortgage, and the amount secured thereby with accumulated interest is still unpaid and is an outstanding obligation of Bertelmann.

In February, 1903, Bertelmann's interest in the property in controversy was levied on and sold under execution issued on a judgment recovered against him and purchased by appellee Lucas, and sheriff's deed therefor executed and delivered to her. Thereafter Mrs. Lucas assumed and exercised control over the property, and in June, 1911, and September, 1925, executed extensions of the lease to the sugar company.

If the sheriff's deed to her is valid and conveyed title, the appellant Bertelmann was thereby divested of his title and interest in the property, and it was vested in the appellee Lucas. The court below, however, found that Bertelmann permitted the property to be sold on execution and purchased by Mrs. Lucas relying on the representations and promises of her agent that he would attend to the matter and do whatever was necessary to protect Bertelmann's interest. That, relying on these representations, Bertelmann did not pay the judgment or attend the sale, although he intended and was able to do so, but allowed the title to be taken by Mrs. Lucas, and therefore ruled that the sheriff's deed to her was fraudulent and void and did not pass title.

Assuming this conclusion to be correct (although it is difficult to understand how that question could be determined in an action in ejectment), it appears that on October 30, 1916, the title to the property in controversy was as follows: One-ninth interest in appellant Frank C. Bertelmann, subject to the mortgage to Mrs. Lucas, seven-ninths interest in Mrs. Lucas, and one-ninth interest in the heirs of Mrs. Scott.

Neither of the two sons, Henry or Christian, electing to exercise the option or privilege given them by the will to purchase or acquire their sisters' interests, the appellant Frank Bertelmann conceived the idea of himself doing so. Not having the necessary funds to comply with the conditions of the will and make the required payments, he, entered into a written agreement on October 30, 1916, with his coappellant McCandless, and with John C. Lane and Noa W. Aluli which, after reciting that under the terms of the will Bertelmann is to pay to his sisters and nonperforming brothers the sum of $5,-000 each in order that he may acquire the fee-simple title to the property in controversy and described in the agreement, and that McCandless agrees to advance $40,000, more or less, for that purpose, and Lane and Aluli to act as Bertelmann's counselors and attorneys in any and all legal or equitable proceedings in connection therewith, contains provision that McCandless will, in consideration of four-ninths interest in the property, make the payment or tender of the sum of $40,000 more or less to the sisters and brothers of Bertelmann, or to Mrs. Lucas and the guardian of the Scott heirs, and in consideration of two-ninths undivided interest Lane and Aluli will undertake to counsel and represent Bertelmann in all legal matters connected with the transaction, in consideration of which, and to secure McCandless, Bertelmann "hereby sells, assigns, transfers, conveys and grants" to McCandless and his heirs "forever 4/9 undivided interest in and to the said lands and real property hereinabove described," and "sells, assigns, transfers, conveys and grants" to Lane and Aluli and "their heirs and assigns forever 2/9 undivided interest" in the property.

After this agreement was signed and on the same date, McCandless obtained $40,000 from the First National Bank of Hawaii on his individual note, and had it placed in canvas bags, and proceded in an automobile with Bertelmann, Aluli, and a representative of the bank to the Lucas home, and Bertelmann, Aluli, and the representative of the bank went into the house and tendered $35,000 to Charles Lucas, the husband and agent of the appellee. The tender was refused. There-

upon Bertelmann, Aluli, and the bank representative returned to the automobile where McCandless was waiting, and they went to the office of the Bishop Trust Company, where a tender of $5,000 was made to it as guardian of the Scott heirs. This was likewise refused. The money was thereupon returned to the bank.

The court whose decision is under review held that inasmuch as the right or option given to the son or sons of the testator to acquire title to all the property by paying each of the sisters and the nonperforming brothers $5,000 is, as held by this court in Lucas v. Scott, 239 F. 450, personal to them and cannot be exercised by an assignee or stranger, the attempted tender or offer to perform was ineffectual because it was made not only for the benefit of Bertelmann, but for McCandless, Lane, and Aluli as well. In this conclusion we concur. Lucas v. Scott involved a construction of the provisions of the will under which the parties to this litigation claim. We there said: "Upon a consideration of the terms of the will, the situation of the testator, his family, and his property, and with the endeavor to ascertain what he intended should be done with his estate, we reach the conclusion that article third was the expression of his desire, not that his sons should be favored in the distribution of his property, but that the title to the land, so held at that time under the lease, should be kept in the male members of his family, and that that was what he meant when he declared his sincere wish and will to be that his lands 'shall befall in equal shares and interest' upon his sons, and that the privilege which he conferred upon his 'then surviving' sons to buy the interests of his daughters at a fixed price was intended to be personal to the sons, and not transferable to another. It was strictly a family scheme, one purpose of which may have been, and probably was, to offer an inducement to the sons to practice habits of industry and economy, so as to accumulate the money requisite for the purchase of the other interests when the time should come for the exercise of their option. There is in the will no expression of the testator's wish that such a right should go to his then surviving sons and their assigns, although it is to be said that the absence of the word 'assigns' is not of controlling effect. But the provision that, in case one or two of his sons should not at that time be able to furnish the amount to pay for the daughters' shares, the other son or sons should have the right to buy the whole thereof, is suggestive of the testator's purpose to exclude strangers from participating in that right of purchase, and to confine it to his sons."

If, as thus decided, the right or privilege conferred by the testator upon his surviving son or sons to buy the interests of the daughters and noncomplying sons at a fixed price was intended to be personal to the sons, and to exclude strangers from participating therein, it seems logically to follow that the provisions of the will cannot be circumvented by a contract and agreement such as was entered into between Bertelmann, McCandless, Lane, and Aluli, for, as well said by the Supreme Court of the territory: "It would be a palpable and unwarranted evasion and circumvention of the intention of the testator and would accomplish nothing." Under the terms of the contract, McCandless was to make the tender and Bertelmann was to be a mere conduit through which the major portion of the property should pass to him and Lane and Aluli, and such is not in accordance with the express wish of the testator, as interpreted in the case alluded to, that all his lands should befall to or become the property of his son or sons. It is true that under the terms of the contract, if the tender had been effective and the title of Mrs. Lucas and the Scott heirs thereby divested, Bertelmann would have become the owner of an undivided interest therein as a tenant in common with McCandless, Lane, and Aluli; but as we understand the testator's will as construed in Lucas v. Scott, it did not contemplate that the complying son or sons should be entitled to the privilege of receiving anything less than the title to all the land. The testator, after making devise of one-ninth interest therein in fee to each of his three sons and each of his six daughters, formulated a scheme by which at least one of the sons might, by complying therewith, acquire the interest of his daughters and of the short-coming sons, and thus obtain absolute title to all the lands. The right or privilege offered was not to acquire title to a part thereof, leaving the title to the remainder in the daughters or sons to whom it was devised, but to acquire all the land by paying to each of the daughters and short-coming sons the sum of $5,000.

The intention of the testator was, in event the option was exercised, that all his heirs should be treated alike by sharing equally in the proceeds and the title to all the property vested in the performing son or sons, but if the son or sons failed to exercise the privilege given them by the will, his intention was that the title to the property should remain in his children in equal shares.

There are other important questions involved in the case, but we do not consider it necessary to consider them.

Judgment affirmed.