## FRANK C. BERTELMANN *v.* MARY N. LUCAS.

### No. 2390.

Argued January 31, 1940.        Decided March 11, 1940.

KEMP, J., CIRCUIT JUDGE MATTHEWMAN IN PLACE OF COKE, C. J., DISQUALIFIED, AND CIRCUIT JUDGE BUCK IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY KEMP, J.

This is an appeal by Frank C. Bertelmann from the decree sustaining the demurrer to his second amended petition without leave to file a third amended petition and dismissing the second amended petition.

The substance of the material allegations of the second amended bill is: That petitioner is a son of Christian Henry Bertelmann, deceased; that his said father died March 15, 1895, possessed of the lands described in the bill, leaving a will which was duly admitted to probate; that by the terms of said will petitioner was devised a parcel of land designated as lot 2 in said will and an undivided 1/9 interest in the other lands of the testator; that on August 13, 1902, petitioner mortgaged his said lands to respondent to secure the sum of $9845 with interest as in said mortgage specified; that at the time of the execution of said mortgage the estate of his said father was being administered in the probate court and the administrator with the will annexed was collecting the rents accruing on said property; that in November, 1902, at the request of respondent, petitioner gave respondent a written order on the administrator to pay to her the share of petitioner of said rentals; that the order was accepted and complied with until November 12, 1906, when the administrator died; that after the death of said administrator the respondent collected petitioner's share of said rental direct from the lessee; that said mortgage

has never been foreclosed; that said mortgage authorizes the mortgagee, upon default, to take possession of the mortgaged premises and contains an assignment to respondent of petitioner's share in said rentals to, be applied, first to interest; second to taxes and assessments against the property; and third to reduction of principal (the exact assignment and default provisions of the mortgage are set out and a copy of the mortgage is attached to the bill as an exhibit); that respondent is now in possession of the lands covered by said mortgage under and by virtue of said mortgage; that respondent entered into possession of said lands under and by virtue of said mortgage not later than June 20, 1911; that petitioner has made no direct interest payments upon the debt secured by said mortgage.

Demurrers having been sustained to the original and first amended bill for the reason, among others, that it appeared that the petitioner was guilty of laches, the petitioner, in his second amended bill, in an attempt to meet the ruling of the circuit judge, made various allegations which he claims show that he was not guilty of laches. Said allegations are, in effect, that during the years between 1902 and 1912 respondent repeatedly made offers to buy petitioner's title in the lands covered by said mortgage; that respondent at no time communicated to petitioner any claim of title to said property until the institution of the action of ejectment herein referred to; that sometime in the year 1916 petitioner learned for the first time, through a court proceeding between respondent and certain parties other than petitioner, that respondent claimed to own said lands through a sheriff's deed to respondent executed February 7, 1903; that he consulted and engaged an attorney to protect his rights and title therein; that his said attorney died while in the midst of preparing legal proceedings to secure to petitioner his title

and interest in said lands; that petitioner thereupon engaged another attorney, who, after an investigation of petitioner's title and claim, brought an action of ejectment against respondent on January 2, 1918; that in said action of ejectment the trial court found, and its finding was sustained by the supreme court, that said sheriff's deed was procured by fraud and was void; that in said proceeding in ejectment respondent asserted that she occupied said land as mortgagee in possession under the mortgage above referred to and the trial court so found, and also found that said mortgage had never been foreclosed, which finding was affirmed by the supreme court of Hawaii; that said action of ejectment was not finally determined until June 28, 1928, when the supreme court held that in view of the fact that respondent was in possession under the mortgage hereinabove referred to and that the same had not been paid, petitioner's remedy was not in ejectment; that on October 15, 1926, petitioner brought an action at law to quiet his title to said premises but the supreme court of the Territory of Hawaii decided on September 3, 1929, that a plea in abatement to said action on the ground at the time it was brought there was pending said action of ejectment was well-taken and sustained the order of the trial judge dismissing the action; that subsequent to the bringing of said ejectment suit in 1918 as aforesaid, on, to wit, July 10, 1922, petitioner brought suit in equity asking, among other things, for an accounting from respondent under said mortgage and that said note and mortgage be canceled; that said bill was held multifarious upon demurrer, the supreme court of the Territory of Hawaii having rendered its decision to that effect on June 27, 1924, and the ninth circuit court of appeals having affirmed the decree entered upon said decision August 3, 1925; that said suit in equity was not finally determined until after the rendition of a decision

of the ninth circuit court of appeals on May 6, 1929; that on August 13, 1929, petitioner engaged Mr. B. S. Ulrich, an attorney of this court, now deceased, to press petitioner's cause in the courts and after many months of delay, due to the illness of said attorney and the great amount of time and labor necessary to be expended by said attorney to familiarize himself with the petitioner's rights and the ramifications of the litigation hereinabove referred to, said Ulrich, in December, 1932, made demand upon respondent for the cancellation of said mortgage, offering to pay the balance, if any, due from petitioner to respondent under said mortgage; that respondent refused and for the first time claimed that she held title to said property by adverse possession; that thereupon said Ulrich filed the present suit for petitioner; that during the entire period from 1916 to the present petitioner has devoted the major part of his time and energy to the effort to protect his rights and title to said land, and has practically lived in the offices of his various attorneys, and has used every effort that his own mind or his attorneys could suggest to press his claim and controversy against said respondent and to expedite a final judicial adjudication of his rights and title.

There are other allegations which we deem unnecessary to recite, such as the allegation of the amount of the rental reserved in the various leases of the lands in controversy.

The prayer is that respondent be ordered to account for all moneys received by her as rent, income, profits or accruals of any kind, from the property of petitioner covered by the mortgage; that the court find from such accounting what, if any, balance is still owing to respondent and that it decree that upon payment of the sum so found said mortgage be declared satisfied, or, in the event it be found that said mortgage obligation has

been satisfied, that the mortgage be declared satisfied, etc.

To the second amended bill the respondent demurred. The demurrer was based on vagueness of the allegations as to former litigation and laches. The circuit judge sustained both grounds of the demurrer. To meet the ruling of the circuit judge the petitioner attached to his proposed third amended bill copies of the pleadings, decisions and judgments in the ejectment case. The circuit judge declined to permit the filing of the third amended bill and entered a decree dismissing the second amended bill. It is from said decree that this appeal is prosecuted.

Before considering the alleged errors, we deem it advisable to dispose of respondent's request that we examine the decision of this court in the ejectment suit, which held the sheriff's deed void and not merely voidable, and correct the error which she claims was thereby committed.

Counsel for appellant challenge our right to re-examine that question. Obviously, if that question has been adjudicated in a former suit between the same parties by a court of competent jurisdiction, that adjudication precludes the same parties from again litigating the question. This is the familiar doctrine of *res judicata*.

In determining whether a decision of a court of competent jurisdiction is *res judicata*, the court in a subsequent case is entitled to consider what facts were before the court in the former case and to give effect to any fresh facts that subsequently take place; its conclusiveness does not depend upon the question whether there is the same demand in both cases, but it exists even where there are different demands, if the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies. (*New Orleans* v. *Citizens' Bank,* 167 U. S. 371.)

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them." *Southern Pacific Rail'd* v. *United States,* 168 U. S. 1, 48, 49. In the foregoing case the lands in dispute were within the limits of a grant to the Atlantic and Pacific Railroad Company, *if* the maps, filed by that company and approved by the land department, are to be regarded as maps of definite location. In a former suit between the same parties it was decided in conformity with the contention of the government that said maps were valid maps of definite location. This finding of fact was the basis for judgment against the Southern Pacific Railroad Company. In the subsequent litigation between the same parties involving different land the company sought to show that said maps were not, as formerly decided, maps of definite location. The company was denied that right for the reason that the former decision was *res judicata.*

"The doctrine of *res judicata* is well established, as well in this Territory as in every other American jurisdiction. It is twofold: first, that the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties concerning the same subject matter and precludes the re-litigation not only of the issues which were actually litigated in the first action but also of all grounds of claim and of defense which might have been properly litigated in the first action but were not litigated or decided; and, second, that the adjudication by a court of competent jurisdiction of any right, fact or issue arising between the parties and actually litigated by them bars the re-litigation between the same parties in any court of the same right, fact or issue arising in any subsequent action or suit between the same parties and this irrespective of whether the later action or suit relates to the same subject matter or to a different subject matter." *Makainai* v. *Lalakea,* 29 Haw. 482, 485.

The foregoing was a partition proceeding instituted by Hannah Makainai against her brother Solomon Lalakea, for the partition of lands formerly owned by their deceased father. After their father's death Hannah, claiming as an heir of her father, sued Solomon in ejectment to recover an undivided 1/8 interest in said land. Solomon claimed said land by virtue of a purported deed from his father. Hannah attacked said deed as a forgery. In said ejectment suit it was decided by the circuit court as a basis for judgment in Hannah's favor that said deed was a forgery. The judgment in favor of Hannah was by this court affirmed. Thereafter, Maria Lalakea, a sister of Hannah and Solomon, died intestate, leaving her seven brothers and sisters as her heirs. Hannah, as one of the seven heirs of her sister, claimed an additional 1/56 interest in said land. She claimed in said partition

suit to own both of said interests totaling an undivided 1/7 interest in said lands. Solomon conceded her title to the undivided 1/8 interest involved in her ejectment suit against him but denied that she owned the additional 1/56 interest which she claimed by inheritance from their deceased sister. He tendered said deed as evidence and offered to prove its validity by a judgment in his favor in a suit between himself and Lilly Hewahewa, another sister, involving the validity of the same deed. The court excluded said deed and judgment from evidence on the ground that, as between Solomon and Hannah, the finding of forgery in the ejectment suit was *res judicata*. This court, in sustaining that ruling, used the language above quoted. Cases to the same effect as the foregoing could be multiplied indefinitely but the doctrine of *res judicata* is too well-known to justify an extensive citation of authority.

Applying the foregoing principles, we reach the conclusion that, regardless of whether the holding that the sheriff's deed was void and not merely voidable was correct, the parties to the present proceeding, being the same as the parties to the ejectment case, are forever foreclosed from again litigating that question; that as between them the matter is *res judicata* and cannot be re-examined in this case.

The same principles applied would seem to put at rest other issues which may or may not arise in this case, as for instance: That said mortgage had not been foreclosed and that Frank C. Bertelmann was then legal owner of the interest in the lands now claimed by him subject to Mrs. Lucas's right to collect rents until the mortgage relation is terminated by appropriate proceedings.

The specifications of error relied upon by petitioner-appellant sufficiently raise the questions argued.

The argument of petitioner is, in effect, that the circumstances which he has set up in his second amended bill are sufficient to excuse the earlier filing of the present proceeding; that his diligence in pursuing the remedies which he sought in the three prior cases negative the idea that he has either acquiesced in the alleged wrong or that there has been a lack of diligence on his part in seeking a remedy.

The respondent contends that the bill, on its face, shows unreasonable delay and that, by analogy, in such a case as this, courts of equity will apply the ten-year statute of limitations of real actions. She also argues that the bill in question contains contradictory allegations and that the bill was thereby rendered demurrable. Her demurrer, which was sustained, did not, however, raise that question. That being true, the question is not before us. It is undoubtedly true, as argued by respondent, that where there are contradictory or inconsistent statements in a bill, its equity will be tested by the weaker rather than by the stronger allegations. (*Barco* v. *Doyle,* 50 Fla. 488, 39 So. 103; *Norris* v. *Eikenberry,* 137 So. [Fla.] 128.) This is equivalent to saying that if the weaker allegations state a cause of action, the bill will be good. We approach the issues with the above rule in mind.

The pleadings before us, setting up as they do the long and varied litigation between the present parties over their rights in the lands devised by the will of petitioner's father and the dealings of the parties prior to the beginning of litigation, present a very extraordinary situation. The will in question and the details of the litigation growing out of petitioner's efforts to procure what he deemed to be his rights under said will are to be found in the following published reports and need not be detailed here: *Bertelman* v. *Kahilina,* 14 Haw. 378; *Bertelmann* v. *Lucas,* 28 Haw. 1; *Bertelmann* v. *Lucas,* 30 Haw. 500;

*Bertelmann* v. *Lucas,* 31 Haw. 71. Some of the above cases were reviewed by the ninth circuit court of appeals but in neither of them was there a reversal or modification of the judgment or decree appealed from. The ejectment case, which was commenced on January 2, 1918, was not finally disposed of until May 6, 1929. The pendency of the foregoing litigation and the other circumstances which we have recounted are pointed to by petitioner to show that he has neither acquiesced in respondent's claims nor been guilty of a lack of diligence in seeking a remedy. Petitioner also asserts that the statutory period of limitation contended for by respondent does not apply in cases where the circumstances are extraordinary or unusual, regardless of the character of the right to be enforced.

We think the authorities uphold the petitioner's contentions.

In a suit for specific performance of a contract for the sale of land, this court has held that "The question of laches does not depend upon the fact that a certain definite time has elapsed, but whether under all of the circumstances petitioner is chargeable with a want of *due* diligence. 'A delay which neither evidences an abandonment of right nor operates to the prejudice of the other party is not a defense.' " *Hurst* v. *Kukahi,* 25 Haw. 194, 196.

The authorities relied upon by respondent to support her contention that a court of equity will apply the statute of limitations by analogy in a case where the relief sought is to recover possession of land go no further than to hold that the statute will be applied in the absence of circumstances accounting for the delay. (42 C. J. § 2150, p. 386; *Hughes* v. *Edwards,* 22 U. S. 488, 6 L. ed. 142; *Holmes* v. *Cleveland C. & C. R. Co.,* 93 Fed. 100; *Levy* v. *Lovell,* 24 Haw. 716.)

We reach the conclusion that circumstances may

excuse delay in all cases cognizable by courts of equity and that statutes of limitations apply only in the absence of circumstances excusing the delay.

It would be very difficult, if not impossible, to formulate a general rule as to what circumstances will excuse delay beyond the statutory period. Probably the most that can be said is that the circumstances must be such as will negative the idea that the petitioner has acquiesced in the alleged wrong and that he has lacked diligence in seeking a remedy. As said by Mr. Justice Brandeis, speaking for the court in *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 488: "But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy." In that case the alleged wrong was consummated in 1891. The bill before the court was filed in 1913, more than twenty-two years after the commission of the wrong complained of. In the interim, however, the petitioner had filed numerous suits against the respondent, seeking to obtain different relief from that asked in his bill filed in 1913. The supreme court, in disposing of respondent's contention that the petitioner was barred by laches, said: "The reorganization agreement is dated December 20, 1887; the decree of foreclosure and sale was entered May 4, 1888; the sale was held September 8, 1888; and the stock in the new company was delivered to the Southern Pacific on February 10, 1891. This suit was not begun until July 26, 1913; and not until that time was there a proper attempt to assert the specific equity here enforced; namely, that the Southern Pacific received the stock in the new Houston Company as trustee for the stockholders of the old. More than twenty-two years had thus elapsed since the wrong complained of was committed. But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in

the alleged wrong or lack of diligence in seeking a remedy. Here plaintiffs, or others representing them, protested as soon as the terms of the reorganization agreement were announced; and ever since, they have with rare pertinacity and undaunted by failure persisted in the diligent pursuit of a remedy as the schedule of the earlier litigation referred to in the margin demonstrates."

The principles announced in the foregoing case apply with equal force to the circumstances of the case before us. In the earlier litigation, held to be sufficient to account for the delay of more than twenty-two years in bringing that suit, the petitioner had attacked the foreclosure and reorganization proceedings as fraudulent and sought to have them set aside. Having failed in his attempt, which he persisted in for some twenty-two years, to have the foreclosure and reorganization proceedings declared fraudulent, he accepted them as valid and claimed his share of the fruits of said proceedings. In our case the petitioner Bertelmann in his former litigation was contending that by virtue of the tenders made by him in October, 1916, he became the owner of an undivided 8/9 interest in all of the lands formerly owned by his father and that he owned the remaining undivided 1/9 interest in said land by virtue of a devise from his father; that the sheriff's deed to Mrs. Lucas was void; that his mortgage to Mrs. Lucas had never been foreclosed; that the rents from said lands were more than sufficient to discharge his mortgage to the respondent and that he was therefore entitled to possession of said land. Two of the three suits filed by Mr. Bertelmann were disposed of adversely to him without a trial on the merits. One of the two was disposed of on demurrer because his bill was found to be multifarious. The other of the two was disposed of on a plea in abatement because of the pendency of the ejectment suit. The ejectment suit was tried. The contentions

of Mr. Bertelmann that he had the legal title to an undivided 1/9 of said land, that the sheriff's deed was void and that his mortgage had not been foreclosed, were upheld. His claim of title to 8/9 interest in said land by virtue of the tenders made by him was denied. This reduced the rentals which he sought to have applied in payment of the mortgage to such an extent that the court found that his mortgage had not been discharged and that he could not therefore recover possession in the ejectment suit of the 1/9 interest which the court found he owned subject to the defendant's right to collect the rents until the mortgage is discharged. In the ejectment suit Mrs. Lucas introduced in evidence both her sheriff's deed and her mortgage. We can construe this in no other way than that she relied on both of said instruments as giving her a right to possession of said land, *i.e.,* she relied upon the sheriff's deed for title and if that failed she desired to fall back upon her mortgage for right of possession. She did fail in her attempt to establish title by the sheriff's deed but she succeeded in establishing her right to possession of said undivided 1/9 interest of said land solely by virtue of her unpaid mortgage.

The allegations of the bill, which are by the demurrer admitted to be true, negative the idea that prior to 1912 Mrs. Lucas claimed any rights in Frank's 1/9 interest other than under and by virtue of his mortgage to her. He began his litigation with her over their respective rights growing out of their varied transactions on January 2, 1918, and has, during practically all of the time since, "with rare pertinacity and undaunted by failure persisted in the diligent pursuit of a remedy."

Failure, long-continued, to discover the appropriate remedy, though well-known, does not establish laches where there has been due diligence unless the respondent

has been prejudiced by the delay. (*Southern Pacific Co. v. Bogert, supra.*)

The decree sustaining the demurrer should be and is, therefore, reversed and the cause remanded for further proceedings.

*M. K. Ashford* and *I. M. Stainback* (*Stainback & Massee* and *M. K. Ashford* on the briefs) for petitioner.

*A. G. M. Robertson* (*Robertson, Castle & Anthony* on the brief) for respondent.